## OTIS v. BACON.

1813.

March 12th.

*Absent....* TODD, J.

ERROR to the Supreme Judicial Court of the state of Massachusetts, in a case involving the construc-

By the 11th
section of the

OTIS

*v.*

BACON.

act of 25th April, 1808, vol. 9, p. 150, the collector had no right to detain a vessel and cargo after her arrival at her port of destination, under a suspicion that she intended to violate the embargo; and such detention could not be justified by instructions from the secretary of the treasury, nor by the confirmation of the president.

tion of an act of congress, and the justification of an officer of the United States, claiming justification under such act: the decision of the Court below being against the justification thus set up.

The case was this: Bacon, the Defendant in error, having obtained permission to import a cargo of flour from Baltimore into the port of Barnstable, arrived with his cargo at a place called the Mud-hole in the district and port of Barnstable on the 2d of October, 1808, and on the 3d obtained from Joseph Otis, the collector of the port, a permit to land the cargo. On the next day the vessel and cargo were seized by Simeon Crowell, the inspector of the port. Bacon called at the collector's office to enquire into the cause of the seizure, and was informed by Joseph Otis, the collector, that he had not authorized it. But William Otis, the deputy collector, in answer to an offer by Bacon to give bond and security to any amount if he would release the vessel and cargo, said " I have got your vessel and I will keep her." Bacon then abandoned the property to William Otis, the Plaintiff in error, and made a protest and abandonment before a notary public. On the 3d day after the seizure, Crowell removed the vessel to Bass river, six miles south-east of the Mud-hole, and on the 13th of October 233 barrels and 49 half barrels of the flour were landed and stowed in Crowell's house. The vessel and the residue of the cargo was afterwards carried away by persons unknown, and the cargo sold in the West Indies

Bacon brought his action of trover against Joseph Otis, the collector, William Otis, the deputy collector, and Simeon Crowell, the inspector. Joseph Otis died before the trial, and Crowell was never taken.

At the trial William Otis, the Plaintiff in error, relied on the 11th section of the act of congress of the 25th of *April,* 1808, *vol.* 9. *p.* 150, by which it is enacted, " That the collectors of the customs be, and they " are hereby respectively authorized to detain any ves- " sel ostensibly bound with a cargo to some other port- " of the United States, whenever, in their opinions, the " intention is to violate or evade any of the provisions, " of the acts laying an embargo, until the decision of

" the president of the United States be had thereupon," and offered in evidence certain letters from the secretary of the treasury, containing instructions to the collector, and stating that the president had confirmed the detention of the vessel: also written orders from Joseph Otis, the collector, to Crowell, the inspector, to seize the vessel and land the cargo. And also offered evidence that an unusually large quantity of flour had been imported into Barnstable about the same time, and also evidence of the declarations of the mate of the vessel the day before she was carried off; all of which evidence was rejected by the Court.

The judge instructed the jury that if they believed the testimony relative to the declarations of William Otis, and the other circumstances, it maintained the issue on the part of Bacon.

And also, that the collector had no right, under the circumstances, to detain the vessel, she having arrived at her port of destination and obtained a permit to unlade.

And further, that if the collector had power to detain the vessel, his authority did not extend to the seizure of the cargo, which seizure was, of itself, unlawful, and a conversion of the cargo.

And that if Bacon had been aiding in forceably rescuing the vessel and cargo, and had obtained any benefit from it, the verdict must be for the Defendant.

The Defendant took a bill of exceptions, and, the verdict and judgment being against him, brought his writ of error under the 25th section of the judiciary act of 1789.

JONES, *for the Plaintiff in error.*

The declarations of the Defendant were not sufficient evidence of the trover and conversion, and there was no evidence that he did any act. The judge ought to have left the jury to draw their own inference from those declarations.

OTIS<br>v.<br>BACON.

The vessel had not in fact arrived at her port of destination. Her clearance was for Yarmouth, which, although within the district of Barnstable, is six miles distant; she might even have gone to Provincetown on the other side of Cape Cod.

Part of the defence was that the vessel was carried off by collusion with the Plaintiff, and yet the judge rejected the principal evidence which connected him with the transaction, the declarations of Martin, the mate, who ran away with the vessel and sold the cargo at Nevis.

The judge also rejected the evidence tending to show the motives for a fraudulent voyage, and the grounds of suspicion which the collector had.

He rejected also the letters of *instruction from the* secretary of the treasury, and the letter giving notice that the president had confirmed the detention of the vessel, which, even if they were not authorized by law, were yet good evidence in mitigation of damages.

AMORY *and* P. B. KEY, *contra.*

If the collector had no right to detain the vessel under any instructions which could be givin; the letters offered in evidence must have been immaterial, and therefore inadmissible.

She was not ostensibly bound to any other port—she had arrived and obtained a permit to land her cargo. Yarmouth was not another port, it was part of the same port of Barnstable.

If a judge tells the jury that a fact is proved, when it is not, it is not an error in *law.* The jury are not bound to regard the opinion of the judge as to the existence of a fact. The sufficiency of any fact or facts to maintain the issue is a matter of law, and the instruction of the judge upon that point is proper.

As to the instructions, if they were merely conformable to the law they were immaterial; and if contrary to law, inadmissible.

In *trover*, what is not a justification cannot be given in evidence in mitigation of damages. The damages are the value of the article converted. Vindictive damages are not to be given. It is a mere indemnification that is sought.

As to the declarations of Martin: he is not proved to be the agent of the Plaintiff. Why was he not examined as a witness?

JONES, *in reply.*

The judge ought to have told the jury that if they found Martin to be the Plaintiff's agent, then his declarations were evidence, otherwise not.

The president's confirmation of the seizure was a justification under the provisions of the law.

The jury may give vindictive damages in *trover*, if they will. Evidence may therefore be given in mitigation.

*March 17th....*WASHINGTON, *J.* delivered the opinion of the Court as follows :

This is an appeal from the Supreme Judicial Court of the commonwealth of Massachusetts, under the 25th section of the judiciary law. The judgment complained of was rendered in an action of trover and conversion, brought by the Appellee against Joseph Otis, Crowell and the Appellant for taking and converting a quantity of flour, the property of the Appellee. The trial took place between the Appellee and Appellant, Joseph Otis having died after the commencement of the suit; and the process not having been served on Crowell. The verdict having been in favor of the Plaintiff, the Appellee, judgment was rendered thereupon in his favor.

By a bill of exceptions taken to the charge of the Court the following facts appear to have been given in evidence. That Bacon having obtained from the governor of Massachusetts such a certificate as authorized him under a provision in one of the embargo laws to transport a cargo of flour from some of the southern

OTIS
*v.*
BACON.

OTIS
*v.*
BACON.

states to the district of Barnstable, did accordingly procure such a cargo at Baltimore and arrived with it in the schooner Ann, at a place called the Mad-hole, in the port and district of Barnstable, on the 2d of October, 1808. On the 3d of the same month a permit to land the cargo was granted by Joseph Otis, the collector of the port. The day following the vessel and cargo were seized by Crowell, the inspector of the port. Bacon immediately called at the collector's office to enquire into the cause of the seizure, and was informed by Joseph Otis that he had not authorized it. But William Otis, the deputy collector, in answer to an offer made by Bacon to give bond and security to any amount if he would release the vessel, said, "I have got your vessel and I will keep her." The offer to give bond not to go any where with the vessel and cargo was repeated, but William Otis refused to give her up. Bacon then proposed to unlade the vessel and again offered bonds, which Otis, the Appellant, refused, and said, " you may see the flour landed, but you shall not have it after it is landed." The Appellee then abandoned the property to the Appellant, and the next day made a protest and abandoned before a notary public. The seizure and detention of the vessel and cargo by Crowell is fully proved. On the third day after the seizure Crowell removed the vessel to Bass river, six miles south-east of Mud-hole: and on the 13th of October 233 barrels and 49 half barrels of the flour were landed and delivered to the Appellee. The vessel, with the residue of the cargo, for the conversion of which residue this suit was brought, was afterwards carried away by persons unknown, and the cargo sold in the West Indies.

Upon this evidence the Court charged the jury that if they believed the evidence of the declaration of William Otis, and of the other circumstances in this case respecting the seizure and detention of the said vessel and her cargo, it was sufficient in point of law to maintain the issue on the part of Bacon, and to prove the conversion of the 298 barrels and 21 half barrels of flour which were carried off in the vessel. That the collector had no right to detain this vessel and cargo, she having arrived at her port of discharge and obtained a permit to unlade, and that even if he had a right

to detain the vessel, this authority did not extend to a seizure of the cargo, and that such seizure was of itself a conversion, and that as the Defendant, Otis, had failed to make out a justification, he must be considered as a wrong doer and chargeable to Bacon for the value of said flour. But that if the jury should believe from the evidence that Bacon aided or consented to the rescue and carrying off the vessel and cargo, or had by forceable or collusive means obtained any benefit from the sale of said cargo in consequence of said rescue, then the Defendant, Otis, was entitled to a verdict.

It is apparent on the face of this record that this cause in the Court below turned upon the construction of the 11th section of the act of congress of the 25th of April, 1808, ch. 66, and the question for this Court to decide is, whether that Court erred in the opinion given to the jury upon that statute. The words of the 11th section are, " that the collectors of the customs be and they are hereby respectively authorized to detain any vessel ostensibly bound with a cargo to some other port of the United States whenever, in their opinion, the intention is to violate or evade any of the provisions of the acts laying an embargo, until the decision of the president of the United States be had thereupon."

If this section authorized the collector to seize and detain this vessel and cargo under the circumstances in the case as detailed in this record, then the opinion of the Court below was erroneous. If it gave no such authority, then it was clearly right.

The power of the collector to detain is confined to a vessel ostensibly bound with a cargo to some other port of the United States. Can a vessel which has actually arrived at her port of discharge, and has received from the collector of the port a permit to land her cargo, be considered as a vessel ostensibly bound to some other port of the United States? We think not. The reason for authorizing the detention of a vessel before she has arrived at her port of discharge does not apply to one which has actually performed her voyage according to the stipulations of the bond given by the owner at the port of her departure. All rational grounds of suspicion of an intended violation of the embargo laws is

OTIS
v.
BACON.

then done away; for if such an intention at any time existed, it would be difficult to assign to the master or owner a motive for postponing the execution of it until after the arrival of the vessel at her port of discharge. It is, therefore, scarcely to be conceived that such a case was in the contemplation of the legislature.

It is true that this vessel had not arrived at Yarmouth, where her cargo was to be landed, at the time of the seizure. But it is sufficient, in the opinion of the Court, that she had arrived at the port to which she was destined, and had received a permit to land. The voyage was as much at an end in relation to the question as if she had arrived within 100 yards of the wharf at Yarmouth. It is, therefore, the unanimous opinion of this Court that there is no error in the opinion of the Court below on the construction, given by that Court, of the above statute.

Other exceptions were taken, in the course of the trial of this cause, to the opinion of the Court below on rejecting certain evidence offered by the Appellant. But this Court has no authority, under the law which authorizes this appeal, to notice any error except such as appears on the face of the record and immediately respects the questions of validity of the constitution, treaties, statutes, commissions, or authorities in dispute.

The opinions of the Court below, in relation to the evidence offered by the Appellant, even if erroneous, which we neither affirm nor deny, have nothing to do with the construction of any statute of the United States; and therefore they cannot be regarded by this Court.

*Judgment affirmed.*