(COMMON LAW.)

## OTIS v. WALTER.

In seizures under the embargo laws, the law itself is a sufficient justification to the seizing officer where the discharge of duty is the *real motive*, and not the *pretext* for detention, and it is not necessary to show probable cause.

But the embargo act of the 25th of April, 1808, related only to vessels ostensibly bound to some port in the United States, and a seizure after the termination of the voyage is unjustifiable; and no further detention of the *cargo* is lawful than what is necessarily dependent on the detention of the *vessel*.

It is not indispensable to the termination of a voyage that the vessel should arrive at the *terminus* of her original destination; but it may be produced by stranding, stress of weather, or any other cause in-

ducing her to enter another port with a view to terminate her voyage *bona fide.*

But if a vessel, not actually arriving at her port of original destination, excites an honest suspicion in the mind of the collector that her demand of a permit to land the cargo was merely colourable, this is not a termination of the voyage so as to preclude the right of detention.

1817.

Otis
v.
Walter.

Error to the supreme judicial court of the state of Massachusetts.

This was an action of trover brought in the state court, in which Walter, the plaintiff in that court, recovered of Otis, the defendant in that court, damages for the conversion of sundry articles constituting the cargo of a vessel called the Ten Sisters. The defendant in the court below, collector of the port of Barnstable, in Massachusetts, had detained the vessel under suspicion of an intention to violate the embargo laws, particularly the act of the 25th of April, 1808, sec. 6. and 11. The vessel sailed from Ipswich with a cargo of flour, tar, and rice, in order to carry the same to Barnstable, or to a place called Bass river in Yarmouth; and proceeded to Hyannis, in the collection district of Barnstable. On her arrival there, the master applied to the collector for a permit to land the cargo, which was refused by the latter, who shortly afterwards seized and detained the vessel under the abovementioned acts. This detention was given in evidence as a defence to the action under the general issue, and the chief justice of the supreme court of Massachusetts instructed the jury " that the said several matters and things, so allowed and proved,

1817.

Otis
v.
Walter.

were not sufficient to bar the plaintiff of his said action, nor did they constitute or amount to any defence whatever in the action," &c. Whereupon the jury found a verdict, and the court rendered a judgment for the plaintiff.

Feb. 5th.

The *Attorney-General,* for the plaintiff in error, argued, that this case fell under the principle of that of Crowell v. M'Fadon,[a] and it would appear that the vessel was *in itinere;* but that even if this were not the state of the case, the jury ought to have been left to make their own inference from the facts, and not to have been charged by the judge that no defence whatever was made out.

Mr. *Read,* for the defendant in error, contended, that the case of Otis v. Bacon[b] was perfectly in point, and showed that the vessel, having arrived at her port of discharge, was no longer within the operation of the embargo laws ; and that if the collector's defence was not completely made out—if it was, in any respect, materially defective, it was not made out at all,

Feb. 21st,

Mr. Justice JOHNSON delivered the opinion of the court. This was an action of trover, brought in the state court of Massachusetts, in which Walter, the plaintiff in that court, recovered of Otis damages for the conversion of sundry articles constituting the cargo of a vessel called the Ten Sisters.

*a* 3 *Cranch,* 94.       *b* 8 *Cranch,* 589.

Otis, the collector of Barnstable, had detained the vessel under suspicion of an intention to violate the embargo laws. (Act of the 25th of April, 1808, sec. 6. and 11.)

It has already been decided, in such cases, that it is not necessary to show probable cause; that the law confides in the discretion of the collector, and is, in itself, a sufficient justification, when *the discharge of duty* is the *real motive*, and not *the pretext* for detention. But it has also been decided, that the law relates only to vessels ostensibly bound to some port in the United States; that a seizure is unjustifiable after the termination of a voyage; and that no further detention of the cargo is lawful than what is necessarily dependent upon the detention of the vessel.

In this case there was no ground for charging the collector with oppression or malversation; and the only point insisted on in the argument was, that she had actually terminated her voyage. As the clearance is not in evidence in the cause, we are obliged to take the termini of the voyage from the testimony of the captain, who swears that he sailed from Ipswich " with a cargo of tar, flour, and rice, to carry the same to *Barnstable, in the county of Barnstable,* or to a place called Bass river, in Yarmouth, in said county;" that he " proceeded to Hyannis, in the district of Barnstable; that on his arrival there he applied for a permit to land, which was refused by the collector, who, in a day or two afterwards, seized the vessel, and detained her under the embargo acts." Ipswich lies to the north of the pen-

insula which terminates in Cape Cod; the port or bay of Barnstable on the north side, of that peninsula; Bass River and Hyannis Bay on the south; all of them known as distinct places, but all lying within the county and collection district of Barnstable. And although Hyannis Bay lies within the district of Barnstable; yet to reach it in sailing from Ipswich you must pass both the town of Barnstable and the mouth of Bass River.

The defence of the collector in the state court was founded on the authority to detain vested in him by the act of congress. The instruction of the chief justice of that state was in these words: "that the said several matters and things, so allowed and proved, were not sufficient to bar the plaintiff of his said action, nor did they constitute or amount to any defence whatever in the action."

Instructions couched in such general terms may serve to embarrass a court exercising appellate jurisdiction; but it is a mistake to suppose that it precludes such a court from a view of the errors which may have been committed on the trial. It has before been decided, that it only obliges this court to look through the whole cause, and examine if there be nothing in it which ought to have called forth a different instruction or judgment. In this case we are of opinion that, conformably to our former decisions, the instruction given could only have been sanctioned on the supposition that the vessel had actually terminated her voyage. But here it is contended that this court stand committed by an ad-

mission in the case of Otis v. Bacon;[c] that a destination to Barnstable is satisfied by an arrival in Hyannis Bay.

We have looked into the record in that case, and find that it will support no such inference. It is true that Mud-hole, the place at which the vessel had arrived in that case, is in Hyannis Bay. But the question of fact did not arise, for the collector had acquiesced in the termination of the voyage there, by actually granting a permit to land. And the grant of the permit was expressly made a ground, in the state court, of the instruction to the jury. Now, it is not indispensable to the termination of the voyage that the vessel should arrive at the *terminus ad quem* she was destined. It may as well be produced by stranding, by stress of weather, or by any other cause inducing her to enter another port, honestly, with a view to terminate her voyage. But if a vessel, not actually arriving at her port of destination, excites an honest suspicion in the mind of the collector, that her demand of a permit was merely colourable, we are of opinion that this can neither be held to be an actual, or admitted termination of the voyage, so as to preclude the right of detention. Had the destination in this case been generally to Barnstable, or the town of Barnstable, there may have been some colour of ground for arguing that her arrival at Hyannis was the termination of her voyage; but as the destination was expressly to Barnstable or Bass river, within the county of

c 7 *Cranch,* 589.

1817.

Otis
v.
Walter.

1817.

Otis
v.
Walter.

Barnstable, her arrival at one or the other of those places was indispensable to the termination of her voyage, supposing her really, in fact, to have had no ulterior destination.

But a destination may be colourable, and intended only to mask an ulterior and illegal destination; and hence, we are of opinion that, unless the fact be conceded by some such unequivocal act as was done by the collector in the case of Otis v. Bacon, it is a question which ought to be left in the instruction of the court open to the jury. And that if any positive instruction on the subject had been given to the jury in this cause, it ought to have been in favour of the defendant, as the arrival in Hyannis Bay would not have been deemed a legal termination of the voyage, either on a policy of insurance, a charter-party, bottomry bond, or any other maritime contract.

A majority of the court are therefore of opinion, that the court of Massachusetts erred in this case, and that the judgment ought to be reversed.

Mr. Justice STORY did not sit in this cause.

Judgment reversed.