EDWARD A. BEDELL, plaintiff in error, v. NATHANIEL E. JANNEY et al., defendants in error.

### Error to McDonough.

As a general rule, a demand should be made for money collected by one person for another, before bringing a suit. The collector, it is presumed, after deducting a reasonable compensation, will transmit the money by the earliest safe opportunity. But where so long a time has elapsed since its collection as to rebut such presumption, he may be considered as having appropriated it to his own use, and a demand is not required.

Interest is recoverable on money collected by one person for another, who has neglected to pay it over in a reasonable time.

Testimony may be introduced, not manifestly applicable to the matter in controversy, if its applicability appears to be susceptible of proof by evidence *aliunde*. If no evidence be introduced, tending in any way to show its applicability, the Court should, on motion of the party against whom it was offered, exclude it from the jury, or instruct them to disregard it. But if there be such additional evidence, it is the peculiar province of the jury to judge of its sufficiency to subserve its intended purposes.

The Statute of Limitations makes two classes of cases, arising *ex contractu*: 1. All actions for arrearages of rent due on a parol demise, and all actions of account, and upon the case, except as well such actions as concern the trade of merchandise between merchant and merchant, their factors or agents, as certain actions of that form arising *ex delicto*; 2. Every action of debt or covenant, for rent or arrearages of rent, founded upon any lease under seal, and any action of debt or covenant, founded upon any single or penal bill, promissory note or writing obligatory, for the direct payment of money or the delivery of property, or the performance of covenants, or upon any award under the hands and seals of arbitrators for the payment of money only. Actions of the first class must be commenced within five years next after the cause of such actions have accrued, and not after, and actions of the second class within sixteen years.

The true construction of the first section of the Statute of Limitations, in its operation upon actions *ex contractu*, is, that it bars the action of *assumpsit* in all cases, except such as concern the trade of merchandise between merchant and merchant, &c. in five years; but the action of *debt* is not barred in any case, in that time, except for arrearages of rent due on parol demise.

The action of *debt* lies wherever *indebitatus assumpsit* will lie, and is a concurrent remedy therewith. Justices of the peace have jurisdiction over both actions, and where the Statute of Limitations is interposed as a defence on trials before those officers, the Statute in prescribing the form of the summons not distinguishing the form of action, the law will presume that to be the particular form which is best calculated to advance the plaintiff's remedy.

The doctrine is well settled, that where technical terms are used in a statute, the Courts will intend that the legislature used them in their technical sense; also, where a term or word, which had a well known common law meaning, is used in a statute, such term or word shall be understood, in the construction of the statute, in the same sense as at the Common Law.

The term "actions of account" has long been understood to comprehend, as well the action of *assumpsit* upon contracts express or implied, as actions *ex delicto*, and to this extent it is used in the first section of the Statute of Limitations.

It is a well established doctrine in construing Statutes of Limitations, that cases within the reason but not within the words of the statute, are not barred, but may be considered as omitted cases, which the legislature have not deemed proper to limit.

THE defendant in error sued the plaintiff in error before a justice of the peace, in Hancock county, in March, 1845, for money collected by the latter for them, and which he had neglected to pay over. Judgment was rendered against Bedell, who appealed to the Circuit Court of that county, and the case was subsequently taken by change of venue into McDonough Circuit Court. It was there tried before the Hon. Norman H. Purple and a jury, when a verdict and judgment were rendered in favor of the plaintiff's below, for $63 debt, and $28·03½ damages.

The evidence on the trial, instructions of the Court, &c., are set forth in the Opinion of the Court.

*W. A. Minshall*, for the plaintiff in error, cited Rev. Stat. 348–9, §§ 1, 4.

The statute is to be liberally expounded. See 3 Peters, 270; 3 Peters, Cond. R. 51–2; Ib. 39; 2 Peters' (U. S.) Dig. 714, §§ 4–8; Statute of Repose, §§ 11, 19, 28; Ib. page 717. *Williams* v. *Williams*, 5 Ohio, 280. A petition and summons held within the Statute in Kentucky, though not named. *Banks* v. *Coyle*, 2 A. K. Marsh. 564; *Robins* v. *Harvey*, 5 Conn. cited in 2 U. S. Dig. 800, § 155; *Head's Executors*, v. ———, 5 J. J. Marsh. 262; *Clark* v. *Schwing*, 1 Dana, 334–5.

In this case, the action will not lie till after a demand or something equivalent. 24 Wend. 203.

Interest is not recoverable till after a demand. 15 Pick. 500; 12 do. 449; 4 Blackf. 81.

Bedell *v.* Janney *et al.*

*R. S. Blackwell*, for the defendants in error.

I.   That debt upon simple contract is not barred by our Statute of Limitations is apparent:

1.   From the express words of the statute, (Rev. Stat 348-9, §§ 1, 4;) where the words of a statute are plain and unambiguous, there is no necessity of resorting to technical rules of construction; but the legislative will, as expressed, must be obeyed.   *The People* v. *Canal Commissioners*, 3 Scam. 161; *Wilkinson* v. *Leland*, 2 Peters, 662; *Clay* v. *Hopkins*, 3 A. K. Marsh. 489; *Holbrook* v. *Holbrook*, 1 Pick. 250; *Ellis* v. *Paige*, Ib. 45.

Equitable construction will not to be tolerated.   *Monson* v. *Chester*, 22 Pick. 387.

When technical words are used in a statute, the Courts will intend that the legislature used them in their technical sense.   *Merchants' Bank* v. *Cook*, 4 Pick. 411; *United States* v. *Magill*, 1 Wash. C. C. R. 463; 3 do. 209.

Another rule is, that where a statute makes use of a word, which had a well known Common Law meaning, the word in the statute shall be understood in the same sense it was at Common Law.   *Mayo* v. *Wilson*, 1 New. Hamp. 55-6.

A statute applicable in its terms to particular actions, cannot be applied by construction to other actions standing on the same reason.   *Jacob* v. *United States*, 1 Brock. 523-4.

And these rules of construction should be adhered to for these reasons:   1:  because the statute is in derogation of the Common Law; and 2. because the effects of the statute are highly penal in their character.

2.   From a comparison of all the statutes enacted by our legislature upon this subject.   Laws of 1819, 141, § 8; Laws of 1827, 284, §§ 1, 4; Rev. Stat. 348, §§ 1, 4.

In a revision, where the phraseology of a former statute is changed, this is evidence of an intent to change its operation.   *Ellis* v. *Paige*, 1 Pick. 45; S. P. 155.

3.   By a recurrence to other omitted cases in this statute, which are equally within the reason, but which the words of

the statute include, to wit: 1. debt on bills of exchange; 2. on foreign judgments; 3. on justices' judgments; and 4. actions on the case between merchants, &c.

4.   By a comparison of our statute with that of 21 Jac. 1, 2 Harr. Dig. 1455; 2 Bouv. Law Dic., refers to the statutes of Alabama, Delaware, Kentucky, Massachusetts, New Jersey, (part of which is like sec. 4,) Pennsylvania, Rhode Island, South Carolina, Vermont, and Virginia.

5.   By express adjudication in Ohio, on a statute similar to ours.   *Tupper* v. *Tupper*, 1 Ohio Cond. R. 615; *Hazlet* v. *Critchfield*, 6 do. 485.

6.   Because in other States, it has been held, that cases within the reason, but not within the words of the statute, are not barred, but may be considered as omitted cases, which the legislature have not deemed proper to limit. *Pease* v. *Howard*, 14 Johns. 419; *Jordon* v. *Robinson*, 15 Maine, (3 Shepley,) 167; *Bass* v. *Bass*, 6 Pick. 362; *Keith* v. *Estill*, 9 Porter, 669; *Pennington* v. *Castleman*, 6 Miss. 277; *Smith* v. *Lockwood*, 7 Wend. 241.

II.   That the justice had jurisdiction of the action of debt, see Rev. Stat. 316, § 17, clause 9.

That debt lies upon simple contracts, and is a concurrent remedy with *assumpsit*, see *United States* v. *Colt*, 1 Peters' C. R. 145; *Smith* v. *Lowell*, 8 Pick. 178.

That the Court will elect that form of action which is most beneficial to the plaintiff, and calculated to advance his remedy, see Rev. Stat. 317, § 21; *Stewart* v. *Dowling*, 3 Scam. 93; *U. S. Bank* v. *Dallum*, 4 Dana, 574; *Lovett* v. *Cowman*, 6 Hill's (N. Y.) R. 225; *Burton* v. *Waples*, 3 Harr. 75; 10 Johns. 104; 5 Wend. 272; 12 Ohio, 131; *Austin* v. *Hayden*, 6 Ohio Cond. R. 158–61, &c.

III.   That a demand was unnecessary in this case before bringing suit, see *Hawley* v. *Sage*, 15 Conn. 52; *Estes* v. *Stokes*, 2 Richardson, 133; 10 Mass. 244; 6 New Hamp. 441.

IV.   As to the want of indorsement on back of the summons of the amount claimed.   The objection comes too late

after defendant has appeared and pleaded to the action. *Swift* v. *Woods*, 5 Blackf. 97.

V. On the question of interest, see Rev. Stat. 295. § 2; *Pease* v. *Barber*, 3 Caines, 265–6.

The Opinion of the Court was delivered by

THOMAS, J.* This action was commenced on the 10th day of March, A. D. 1845, before a justice of the peace of Hancock county, by the defendant in error against the plaintiff in error. The demand sued on, was for money alleged to have been collected by the defendant for the plaintiffs' use, upon a note due to the latter, and by them placed in the hands of the former for collection. The summons was in the form prescribed by the statute. Rev. Stat. Ch. LIX, § 21.

The case was taken by appeal into the Circuit Court of the aforesaid county of Hancock, and thence on change of venue to the McDonough Circuit Court, where a trial was had by the jury.

The defendant, on going into trial, notified the plaintiffs' attorney that he should set up and rely upon the Statute of Limitations, and accordingly he did insist that the plaintiffs' action and claim were barred in law.

The testimony introduced by the plaintiffs in support of their claim consisted of the following items, viz:

1. A letter from defendant to plaintiffs, (admitted on the trial to be in the defendant's handwriting,) dated December 30, 1838, acknowledging the receipt of a letter from the plaintiffs, enclosing a note on Montague and Depp, and stating in substance, that they having failed to pay the money as they had promised to do, and Mr. Depp having left the State, he had put the note in suit, and presumed that it would be collected soon, when he promised to inform them, &c.

---

* WILSON, C. J. did not sit in this case.

2.   A transcript from the docket of Samuel Steele, a jus-
tice of the peace of Hancock county, showing the com-
mencement of a suit before said justice on the sixth day of
January, 1839, in the name of the plaintiffs, against Montague
and Depp, upon a promissory note executed by them to said
plaintiffs, service of process on the defendant, Montague, and
the rendition of judgment in said suit in favor of the plaintiffs
against said defendant Montague, for the sum of $62·26
debt, with their costs, &c.   The issuing of execution on said
judgment, and its return by defendant (E. A. Bedell,) with-
out any official return; and that a renewed execution had
been issued and delivered to said Bedell, and not returned;

3.   The receipt of the defendant to J. Cole, C. H. C. for
sixty three dollars, the full amount of a judgment and inter-
est against John Montague before Samuel Steele, dated De-
cember 18, 1839, the signature of the defendant to said
receipt being admitted on the trial; and

4.   The oral statement of one J. Cole, (who was
sworn as a witness on the trial,) that he, the said witness, in
the year 1839, was a constable of Hancock county; that as
such constable he received for collection, an execution is-
sued by Samuel Steele, in favor of the plaintiffs, and against
one John Montague; that he collected the same, and paid
the money over to the defemdant as the agent of the plaintiffs
on the collection of the same in the year 1839, and that the
amount of said payment was about $63.

The defendants objected to each of the foregoing items of
evidence, when they were respectively offered by the plain-
tiff, (except the last, which was introduced without objec-
tion,) but the Court overruled his objections, and admitted
the evidence.

This being all the evidence in the cause, the defendant
asked the Court to give the following instructions to the
jury, viz:

1st.   "That if they believed from the evidence, that the
plaintiffs' demand and cause of action accrued more than
five years next before the commencement of this suit, the

plaintiff could not recover, unless the defendant, within five years next before the commencement of this suit, had in some manner admitted the same to be unpaid;"

2d. "That if the jury believed from the evidence, that the plaintiffs in the year 1838, sent to the defendant from St. Louis, a claim in their favor for collection, and plaintiffs had not called on the said defendant, or in some way made demand for the money before the commencement of this suit, they cannot in this action recover;"

3d. "That they should not take into their consideration any evidence before them, which did not apply to the demand sued on;" which said third instruction the Court gave, adding thereto as a modification, "that the Court was not advised, that any evidence inapplicable to the plaintiffs' claim sued on had been given, but of this the jury would judge."

The first and second instructions the Court refused to give, but gave the following in lieu of them, viz:

1st. "That the action of *assumpsit* was barred by the Statute of Limitations in five years after the cause af action accrued; but this suit having been commenced before a justice of the peace, that upon the claim, either debt or assumpsit would lie; that to an action of debt on such a claim, our statute had interposed no limitation, and that consequently in an action upon such claim, the limitation in the opinion of this Court remained as at Common Law, and the claim would only be barred by the lapse of twenty years from the time such cause of action accrued; that the action of debt being the most beneficial form of action for the plaintiff, they had a right to treat it as such."

2d. "That if the plaintiffs had intrusted the defendant with the collection of money for their use, that ordinarily, before this action could be maintained, a demand should be made for the money so collected; but in this case, if from the lapse of time, or any other circumstances appearing in the cause, they were satisfied that the defendant had col-

lected money belonging to the plaintiffs, and had converted the same to his own use, no demand for the same would be necessary; and further, that if they believed from the evidence, that money had been so collected, and appropriated, and there had been an unreasonable or vexatious delay of payment of the same, the plaintiffs were entitled to recover interest on the amount so collected, deducting a reasonable compensation for defendant's services in collecting the same.

The jury rendered a verdict in favor of the plaintiffs for $63 debt, and $28·03½ damages, with costs, &c.

The defendant moved for a new trial on the following grounds, to wit: 1st. that the verdict was against the evidence; 2d. that the verdict was against the law; 3d. that the Court erred in not giving the instructions asked for by defendant; 4th. in giving the instructions that were given; 5th. in giving instructions as qualified; and 6th. in admitting improper testimony. The Court overruled said motion, and rendered judgment on the verdict.

The defendant excepted during the progress of the trial, to the several opinions of the Court: 1st. in admitting the evidence objected to by him; 2d. in refusing the instructions asked for by him; 3d. in giving the instructions that were given; 4th. in refusing a new trial; and now prosecuting his writ of error, assigns them for error.

The assignment of error resolves itself into two propositions, to wit: *first,* that the plaintiffs' case was not made out by legal and sufficient proof; and *second,* that the demand suedo n was barred by the lapse of time, by virtue of the Statute of Limitations.

I.   The first of these propositions involves inquiries, 1st, as to the admissibility of plaintiffs' evidence; and 2d, as to its sufficiency.

Both of these inquiries must be answered affirmatively. The plaintiffs' allegations were, that they had placed a demand due them in the hands of the defendant for collection;

Bedell *v.* Janney *et al.*

and that he had received the money on that demand, and appropriated it to his own use. The testimony corresponded with, and fully sustained these allegations.

It consisted of the defendant's admissions in writing, of his reception of the plaintiffs' demand for collection; of his receipt of money shown by parol evidence to have been collected thereon; and of a transcript from a justice's docket, showing the institution of a suit before such justice on said demand, and the proceedings thereon, to their termination in the execution on which the money was eventually collected, and paid over to defendant, and oral testimony explanatory of the documentary. It was, consequently, properly adjudged admissible, both upon the grounds of its relevancy and its competency. It proved everything alleged by the plaintiffs, and was therefore properly held sufficient to entitle them to a recovery.

Nor is this result varied by the fact that the commencement of the plaintiffs' suit was not preceded by a demand of payment from the defendant. The doctrine contained in the instructions of the Circuit Court on this point is undoubtedly correct. A person is entitled to money collected for him by another so soon as received by the latter, and good faith on the part of the collector demands its immediate payment by him; but, nevertheless, he is ordinarily not subjected to suit for his failure or omission to make such payment, until after demand therefor has been made of him.

As a general rule in such cases, it may be presumed that payment has been delayed by reason of the want of safe and convenient means of transmission, or, of some other good and sufficient cause, and that the recipient of the money, still considering himself as entitled to no more than enough reasonably to compensate him for his services in collecting it, will pay it over on demand. But, where so long a time has elapsed since the collection of the money, as to rebut any such presumption in favor of the collector, he may well be considered as having appropriated it to his own use, and then, neither law nor reason requires that before he can be sued for his non-feasance, he should be requested to do

what his conduct sufficiently indicates his determination not to do.

The circumstances of the case at bar establish for it peculiar claims to exemption from the operation of the general rule referred to, as regulating the liabilities of collectors. The defendant had been so long the recipient of the plaintiffs' money without accounting to them for it, or being called upon by them to do so, that when, at length, they endeavored to collect it from him by suit, he claimed that time had absolved him from his liability; that the Statute of Limitations had afforded the privilege of a repose, not to be disturbed by having obtruded upon him this outlawed claim of his employers. The Court might, therefore, well submit it to the jury to say whether there had not been such an appropriation by the defendant of the plaintiffs' money to his own use as to deprive him of the right to a demand of payment, before the commencement of proceedings against him for its legal coercion. And well might the jury respond affirmatively to that proposition, and say, as by their verdict they did say, that there had been so unreasonable and vexatious a delay of payment, on the part of the defendant, as to entitle the plaintiffs to recover not only the amount collected by the defendant for their use, (after deducting therefrom a reasonable compensation for his services,) but also interest thereon.

This view of the subject is fully sustained by authority, so far as the right to commence suit without a previous demand is concerned. *Hawley* v. *Sage*, 15 Conn. 52; *Estes* v. *Stokes*, 2 Richardson, 133; 10 Mass. 244; 6 N. Hamp. 541.

The right to a recovery of interest in such cases as the jury found the case at bar to be, is expressly given by our Statute. Rev. Stat. Ch. LIV. § 1. Upon this question of interest see, also, the case of *Pease* v. *Barber*, 3 Caines, 265-6.

The alleged error of the Court below, in giving the third instruction requested by the defendant, not as asked for by him, but as qualified by the Court, may here properly be disposed of.

The exigency seldom happens in practice, rendering such an instruction proper, either as asked for by the defendant or as given by the Court. The relevancy of testimony being indispensable to its admissibility, that question is usually settled by the Court in admitting the evidence, when objected to, and is not left for the ulterior examination of either the Court or jury. But this is not necessarily so in all cases.

Testimony may be offered not manifestly applicable to the matter in controversy, but should not therefore be rejected, if its applicability appeared to be susceptible of proof by evidence *aliunde*. If it were otherwise, no case depending upon the coincidence of a series of independent facts could ever be made out by proof. Isolated from the others, each fact in such case might appear wholly inapplicable; combined, their application would be manifest; and yet they must necessarily be introduced in evidence singly.

The question of the relevancy of such evidence, therefore, remains to be considered in connection with the suppletory and correlative evidence introduced. If no testimony be introduced tending in any way to show its applicability, the Court should, on motion of the party against whom it was offered, exclude it from the jury or instruct them to disregard it. But if there be additional evidence tending to show the relevancy of that in aid of which it was offered, it becomes the peculiar province of the jury to judge of its sufficiency to subserve its intended purposes.

An illustration of this rule is found in the case at bar. The plaintiffs, to make out their case, proved among other things the defendant's acknowledgment in writing that he had received the sum of $63 of one J. Cole, a constable of Hancock county, in full of the amount of a judgment and interest against John Montague, before Samuel Steele, but that alone did not show his reception of the plaintiffs' money. It is true that the plaintiffs had recovered a judgment before a justice by the name of Samuel Steele, against a defendant of the name of John Montague, for the sum of $63, and that between that judgment, and that on which the defendant received the money, there was in these particulars the most striking. resem-

blance, and yet the proof of their identity was incomplete. The judgment on which the money was collected might have been, for any thing appearing in the receipt, in favor of the defendant himself or any other person than the plaintiffs. Additional evidence was consequently necessary to show that the judgment referred to in the receipt was the plaintiffs' judgment. The constable from whom the money was received, was accordingly called as a witness, and examined as to that point. The sufficiency of his evidence for the purposes for which it was intended, was properly left by the Court to be determined by the jury. And, indeed, the instructions as asked for, implied what the qualification by the Court expressed, that the jury were to judge of the applicability of the evidence; else, how could they disregard such as was inapplicable? The Court was not called upon to indicate the evidence to be disregarded by the jury, but they were to determine that matter for themselves.

II. The second proposition involves considerations which, although they throw around the case at bar a degree of interest denied to it by the insignificance of the amount in controversy, are nevertheless less interesting and comprehensive in their character, than those embraced in the instruction of the Court below, and discussed by the counsel on both sides in the argument at bar. It presents for settlement a question of the construction of our Statute of Limitations, but not to the extent contemplated by the instruction and arguments referred to.

The statute makes two classes of cases arising *ex contractu*, the first enumerated in the first section, and embracing "all actions for arrearages of rent due on a parol demise, and all actions of account, and upon the case, except," as well "such actions as concern the trade of merchandize between merchant and merchant, their factors or agents," as certain actions of that form arising *ex delicto.* Actions of this class are required to "be commenced within five years next after the cause of such actions shall have accrued, and not after."

The second class is defined in the fourth section, and

comprises "every action of debt or covenant, for rent or ar-rearages of rent provided upon any lease under seal, and every action of debt or covenant, founded upon any single or penal bill, promissory note or writing obligatory, for the direct payment of money or the delivery of property, or the performance of covenants, or upon any award under the hands and seals of arbitrators for the payment of money only." The lapse of sixteen years is required to bar any of the actions belonging to this class.

The plaintiffs' demand was more than five, but less than sixteen years old; the inquiry consequently arises upon the record whether that demand in manner and form as it was sought to be enforced, comes within the first mentioned class? If so, it was barred by the lapse of time, but otherwise not. If it does not belong to that class, it is bootless to inquire whether it belongs to the other, or not, as in either event it will avail the defendant nothing. His defence to an action barred only after the expiration of sixteen years, had not, when the suit was commenced, and has not yet matured; the result, consequently is, as it affects that defence, the same whether the action would have been barred in sixteen years or never.

The defendant's counsel insists that the case at bar is one of a class of cases expressly named in the first section, and that consequently the plaintiffs' demand has been worn away by the lapse of time. His position is, that the term "actions of account," as used in that section, and "actions on ac-counts" are equivalent terms, and consequently that every action, of whatsoever form or nature it may be, founded upon an account, must by the requisitions of that provision of law be brought within five years, and not after. But that posi-tion is wholly indefensible by authority.

The doctrine is well settled that where technical terms are used in a statute, the Courts will intend that the Legis-lature used them in their technical sense. *Merchants' Bank* v. *Cook*, 4 Pick. 411; 1 Wash. C. C. R. 463; 3 do. 209.

And again, that where a term or word which had a well known common law meaning is used in a statute, such word

or term shall be understood, in the construction of the statute, in the same sense as at the Common Law. *Mayo* v. *Wilson,* 1 New Hamp. 555–6. Tested by these rules, the doctrine contended for by the defendant's counsel stands condemned. The term under consideration, to wit, "actions of account," is "a technical term" and has "a well known common law meaning." It indicates a form of action, as well known, although not so frequently adopted in practice, as the action of *debt* or *assumpsit.* It was the action used at the Common Law to coerce a settlement of accounts by partners, bailiffs, and receivers, before Auditors appointed for that purpose by the Court, upon rendering the pecuniary or interlocutory judgment *quod computet.* For the same purpose it was long since engrafted on our jurisprudence, and is undoubtedly the form of action, and the only one referred to *eo nomine* in the first section.

But although the term, the meaning of which has been considered, is not sufficiently comprehensive to embrace every form of action that may be maintained upon an account, there nevertheless is another term used in the same section, which, by the rules of construction already referred to, clearly does include within its meaning, at least one such action. It is "the action on the case."

However circumscribed the limits of that action originally may have been, it has long been universally understood to comprehend as well the action of *assumpsit,* upon contracts express or implied, as actions *ex delicto.* This general term indicating a class of cases, being used in the first section, without any thing to restrict its operation to any one of the particular actions, confederating to make up that class, it must be understood as being operative upon all of them. Such is the uniform rule of construction in all such cases. But the intention of the legislature here to use the term under consideration in its broadest and most general sense, is apparent from the fact of their exempting from the operation of the limitation prescribed by them upon the right of commencing "actions on the case; such actions as concern the trade of merchandise between merchant and merchant, their factors

and agents." If the law was intended to operate only upon actions arising *ex delicto*, why specially except from its operation these actions *ex contractu?* The exception in this, as in many other cases, proves the rule. But this is not an open question. It was expressly settled by Court in the case of *White* v. *Hight*, 1 Scam. 205, that the term, "the action on the case," as used in the first section of the Act of 1827, of which the first section of the present law is a mere transcript, does include the action of *assumpsit*.

Nor is this construction controverted by the plaintiffs' counsel. He expressly admits that the action of *assumpsit* is, in all cases, barred in five years when the provision of law under consideration is relied upon for that purpose, but denies that the action of *debt*, on demands like the plaintiff's is thus barred, and insists that the action in the case at bar, is *debt* and not *assumpsit*.

Both of his positions are combatted by the defendant's counsel. In addition to the doctrine contended for by him already considered, he maintains that the action of *debt* on open account comes within the spirit and meaning of the first section, if not expressly named therein, and is therefore to be considered as one of the actions barred by that provision of law; that the intention of the legislature was to bar demands of that nature, and not particular actions for their recovery. But this position is likewise untenable in law. By the eighth section of the Act regulating Practice in the Supreme and Circuit Courts of this State, and for other purposes, approved March 22, 1819, (Laws 1819, 141, § 8,) "actions of *debt* grounded upon any lending or contract without specialty," were specifically barred in five years. They have been omitted in the subsequent laws in *pari materia*, and there the intention of the legislature to change the law affecting that class of actions, is manifest. *Ellis* v. *Paige*, 1 Pick. 45; Laws of 1827, 284, §§ 1, 4; Rev. Stat. Ch. LXVI, § 1.

In *Jacobs* v. *United States*, Brock. 523–4, it is held that a statute applicable in its terms to particular actions, cannot be applied by construction, to other actions based upon the same reasons.

In Ohio it has been decided, that actions not specifically enumerated in their Statute of Limitations are not thereby barred. *Tappan* v. *Tappan*, 1 Ohio Cond. R. 615; *Hazlet* v. *Critchfield*, 6 do. 485.

And by numerous adjudications in other Statest, he doctrine is well established in the construction of Statutes of Limitations, that cases within the reason, but not within the words of the statute are not barred, but may be considered as omitted cases, which the legislature have not deemed proper to limit. *Pease* v. *Howard*, 14 Johns. 479; *Jordan* v. *Robinson*, 15 Maine, (3 Shepley,) 167; *Bass* v. *Bass*, 6 Pick. 362; *Keith* v. *Estill*, 9 Porter, 669; *Pennington* v. *Castleman*, 6 Mo. 257; *Smith* v. *Lockwood*, 7 Wend. 241. And in England it has been held, that the action of *debt* given by the statute of Westm. 2, C. 11, against sheriffs, and by the I. Rich. 2, C. 12, against wardens of the fleet, being founded in *mala facio*, and also given by statute, is not within the Statute of Limitations of 21 Jac. 1, C. 16, which speaks of debts arising by lending on contract. 2 Bac. Abr. 526; Saund. 34; Sid. 305, 191.

Nor is this doctrine at war with that so frequently held in the books, that the statute is to be liberally expounded. That liberality of exposition is found, not in extending the statute to cases not clearly within its provisions, but in refusing to withdraw from its operation, such as it manifestly does embrace. The correctness of this view of the subject will appear from an examination of the cases cited by the defendant's counsel. 3 Peters, 270; 3 Conn. 51–2; Ib. 39; 2 Peters' Dig. 714, §§ 4–8, 19, 28.

It follows, that the true construction of the first section of our Statute of Limitations in its operation upon actions *ex contractu* is, that it bars the action of *assumpsit*, in all cases except "such as concern the trade of merchandise between merchant and merchant, &c." in five years; but the action of *debt* in no case, except "for arrearages of rent due on parol demise."

The legislature, in the imposition of restrictions upon the rights of creditors, in this behalf certainly have exhibited

some degree of fastidiousness, denying to them the privilege of maintaining a particular form of action for the recovery of their demands after the lapse of five years, but leaving other concurrent actions for the same purpose in unimpaired force and vigor for sixteen years, if not longer. Were it our province to condemn or amend such legislation, we should certainly say, that if there be any reason for this preference of one form of action to another of the same results and no more, we cannot perceive it; and consequently we would abolish the distinction. But such is not our privilege. We have but to expound and administer the law as it is; not to declare it, or make what should be.

The only question remaining to be determined is, whether the case at bar is *debt* or *assumpsit*.

We have not those unerring *criteria* to guide us in the solution of this question, that are found in the form of the process and pleadings in actions commenced and prosecuted in Courts of record. The distinctive features of the two forms of action under consideration, there so apparent, are obliterated by the legislation regulating practice before justices of the peace. Justices have jurisdiction of both actions, and a common form of summons is prescribed for both. Rev. Stat. Ch. LLX, §§ 17, 21. Debt lies upon simple contracts wherever *indebitatus assumpsit* will lie, and is a concurrent remedy therewith. *United States* v. *Colt*, 1 Peters' C. C. R. 145; *Smith* v. *Lowell*, 8 Pick. 178. And there are no written pleadings in justices' courts.

The result is, that the case at bar, like every other suit brought before a justice of the peace upon "a demand on which *debt* or *assumpsit* would lie," occupies ground in all respects common to both those forms of action, and presents no feature peculiarly characteristic of either. Other than the ordinary means of distinguishing them must consequently be resorted to. What shall that be? I know of none better nor more appropriate than that adopted by the Circuit Court in its instruction to the jury, viz: to leave "it to the plaintiffs to elect that form" of action most beneficial to themselves and best

calculated to advance their remedy. The law raises the the presumption that such was the form of action intended to be commenced by them, for a man will always be presumed to do what it is his interest to do. But moreover, to have treated the action as *assumpsit* and not *debt,* would have been to injure the plaintiffs without materially benefiting the defendant. It would, by compelling the plaintiffs to take a nonsuit, have delayed their remedy, and subjected them to the payment of the costs of the proceeding improvidently commenced by them, in a form of action barred by the lapse of time; but it would have left them the privilege of suing in another form of action to which no such defence could be successfully interposed. .

But the rule is sanctioned as well by authority as reason. *U. S. Bank* v. *Dallam,* 4 Dana, 574; *Lovett* v. *Couman,* 6 Hill's (N. Y.) R. 225; *Benton* v. *Waples,* 3 Harr. 75; 10 Johns. 104; 5 Wend. 275; 12 Ohio, 131; *Austin* v. *Hayden,* 6 Ohio Cond. R. 158.

It follows that the plaintiffs having elected to treat their action as debt, they were not precluded from maintaining it although the demand on which it was founded was of more than five years' standing.

This view of the subject, as hereinbefore intimated, disposes of the whole case, without the necessity on our part of examining the question involved in the instruction of the Court, and discussed with so much of earnestness and ability by the counsel, whether the action of debt on an account, other than for "rent or arrearages of rent founded upon any lease under seal," is barred by section four of the Statute of Limitations, in sixteen years? As has been said, the record presents no such question. Any settlement of it by us, therefore, being uncalled for, would be but an abstraction, and like all other *obiter dicta,* operative not to settle the law of the case before us, but perhaps to unsettle it in reference to other cases; affecting in no wise the result of the case at bar, (for as has been shown, that must be the same whether debt on the plaintiffs' demand would have been barred after sixteen years, or as a *casus omissus,* never,) but tending, should.

we hold that there is no such bar, to disturb the fancied security of persons resting quietly under the supposed shelter of this "statute of repose." Therefore, whatever may be our views on this question, we consider it our duty to refrain from their expression here, leaving it for settlement whenever a case shall arise demanding its adjudication.

The judgment of the Circuit Court is affirmed with costs.

*Judgment affirmed.*