(No. 4022█

JOHN B. TOMASHESKI, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 16, 1948.*

LONDON G. MIDDLETON, for Claimant.

GEORGE F. BARRETT, Attorney General; and C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

144

BERGSTROM, J.

The claimant, John B. Tomasheski, filed his complaint April 28, 1947, alleging that he received certain serious and permanent injuries to his person due to the negligence of the respondent while he was an inmate at the Peoria State Hospital, Bartonville, Illinois.

He alleges that in June 1946, while an inmate in the State Institution, in Cottage 2-3, he went to the bathroom early one morning while no attendant was present, had an epileptic attack during which he grabbed an unprotected steam pipe, resulting in his sustaining serious burns. On July 23, 1947 complainant amended his complaint, changing Paragraph 6 to allege that his left hand was burned rather than his right hand, and substituting a new paragraph for Paragraph 11, which was made to allege that claimant had received surgical treatment at the Illinois Research Hospital at Chicago, and that because of the burns which he received it was necessary to amputate his right little finger.

The record in this case consists of the complaint with the amendments thereto, the answer of respondent, transcript of testimony on behalf of both claimant and respondent, waiver of brief and argument on behalf of claimant, statement, brief and argument of respondent, and reply argument on behalf of claimant.

The claimant contends that injuries he sustained are a result of negligent treatment of his burns by the doctors at the Peoria State Hospital and by the negligence of respondent in leaving the steam pipes uncovered.

With reference to his first contention, there is no evidence showing any negligence in the medical treatment of claimant. The evidence shows that the usual and recognized method of treatment for burns was given the claimant and that the results were satisfactory under the circumstances.

With reference to the second contention of claimant that the accident occurred through the negligence of respondent, the pertinent facts, as deduced from the evidence, are as follows: The Peoria State Hospital did not ordinarily hospitalize epileptics. Claimant was there as a voluntary patient. They did not refuse him admission, because the necessary treatment was available. He was in need of treatment, but his condition did not require personal supervision. He was physically able to help in the work at the cottage to which he was assigned. Dr. Trigger testified that the pipes in question were off in one corner. They are not covered and had been there in this condition for about forty years, and that an accident had never happened at this particular place before. He also testified on cross-examination, that at the State Hospital individuals had previously had epileptic attacks and got burned on radiators and pipes. From the claimant's testimony, it is apparent that he does not recall exactly what occurred, and Dr. Trigger testified that a person does not remember what takes place during an epileptic seizure, and also that it is characteristic of such patients, during a seizure, to try and grab hold of some object. We can conclude from all the evidence, however, that claimant suffered an epileptic seizure and, while in this condition, grabbed hold of the hot steam pipes in the corner of said bathroom, and burned his hands as alleged.

The controlling issue to be determined from the rec-

ord is whether the accident in question was one which an ordinary prudent person, under the circumstances, ought to have foreseen and could reasonably anticipate. The Attorney General, for respondent, argues that where a condition is negligently permitted to exist, but some intervening act causes an injury to occur in connection with such a condition, the intervening act and not the existing condition is the proximate cause of the injury. He alleges that the hot steam pipes were an existing condition, and the epileptic seizure, an intervening act beyond the control of either the claimant or the respondent, was the proximate cause. He cites the case of *Merlo* v. *Public Service Co.*, 381 Ill. 300, in which case electric wires, which were not protected by insulation, were held to be a dangerous condition, but the operation of a crane, which came in contact with the wires and resulted in the death of a workman, was held to be an intervening act which was the proximate cause of the death, and the company maintaining the electric wires was held not to be responsible for the death. He also cites the recent case of *Moudy* v. *New York Central Railroad Co.*, 385 Ill. 446, where the Supreme Court of Illinois, in determining the proximate cause of the accident, stated on page 453, as follows:

*"The theory of the Appellate Court that he was in the exercise of due care because he had a right to believe that his brakes would stop him in proper time at the speed he was going, and that their failure to act, without negligence upon his part, renders the railroad company liable, is also untenable. We have frequently held that, in order for a plaintiff to recover, the defendant's negligence must have proximately caused, or contributed to cause, the injuries, rather than merely causing a condition providing an opportunity for other causal agencies to act. Merlo v. Public Service Co., 381 Ill. 300; Briske v. Village of Burnham, 379 Ill. 193; Illinois Central Railroad Co. v. Oswald, 338 Ill. 270.) In the Merlo case we said: 'The test that should be applied in all cases in determining the question of proximate cause is whether the first wrongdoer might have reasonably anticipated the intervening cause as a natural and probable result of the first party's*

own negligence.' It would be an extreme application of the law to require a railroad company operating its trains on fixed tracks, and required by the exigencies of commerce to move its passengers and commodities rapidly, to anticipate (at every grade crossing) there might be defective brakes upon every automobile approaching a crossing, which would relieve the driver of the exercise of due care, and make the railroad company liable, when not its negligence, but the traveler's lack of due care, caused the accident.

"The distinction between a crossing accident occurring from lack of due care upon the part of the plaintiff, or because of an intervening cause under its control, or at least not under the control of the defendant, is so slight as to make rules applicable to them practically the same. We are of the opinion that the evidence in this case most favorable to the plaintiff fails to show that he was in the exercise of due care, or that the alleged negligence of the defendant was the proximate cause of the accident. Under such circumstances, as a matter of law, the plaintiff is not entitled to recover."

Counsel for claimant, in his reply argument, calls attention to that part of the *Merlo case, supra,* where the court said: *"The test that should be applied in all cases, in determining the question of proximate cause, is whether the first wrongdoer might have reasonably anticipated the intervening cause, as a natural and probable result of the first party's own negligence."*

It is fundamental in tort law that to prove negligence there must be shown a duty to the person injured, a breach of the duty and an injury proximately resulting from such breach.

If we should conclude that the uncovered pipes creates a condition so that an ordinary prudent person could have reasonably anticipated the accident in question, we must necessarily resolve the issues in favor of claimant. However, the record would not sustain this view except by a very narrow application of this rule The evidence shows that these particular steam pipes were in their present condition for a period of approximately forty years, and that no one was previously injured because of their existence. There is no evidence in the record that the danger of their exposed condition

was ever brought to anyone's attention, as was done in the *Neering* v. *Illinois Central Railroad Co. case,* 383 Ill 366, where the dangerous condition present at the station was repeatedly called to the company's attention. The evidence also shows that the treatment of epileptic patients at this hospital was the exception and not the rule. It would be an extreme application of the law to require respondent to insulate all steam pipes in all public buildings, without regard to the persons who might come in contact with them. Considering the many years that these particular pipes had remained in their present condition without any resulting accident, it could not be reasonably concluded that they were a menace or hazard to the patients or workers at the Peoria State Hospital It is customary for persons having an epileptic seizure to fall wherever they might be at the time of an attack. This might have happened while the patient was in some other part of the hospital or grounds and under such circumstances that he could have injured himself by falling to the floor, on a piece of furniture, or any hard or sharp object which might have come in contact with his person. This is one of the inherent dangers always present to those unfortunate enough to be suffering from this disease. To say that respondent would have to protect a person having this disease from all possibilities would create a greater duty on the part of respondent than we feel is justified. It would, in fact, make it an insurer of all such patients.

Considering the accident from the evidence and all the circumstances surrounding it, we are of the opinion that the accident is one that could not reasonably have been anticipated. The presence of the uninsulated steam pipes was merely a condition similar to the unprotected wires in the *Merlo case, supra,* and the epileptic seizure

an intervening act beyond the control of either the claimant or the respondent. It was the proximate cause of the injury.

The evidence is not clear as to the damage which was sustained by claimant, if any. At the time he entered the hospital he was suffering from Dupuytren's contracture of both hands, and they were seriously crippled from this disease. Undoubtedly, the condition was aggravated by the burns, but there is some indication from the evidence that his hands and fingers are in better condition now than they were at the time he entered the hospital, with the exception of his amputated little finger, which was undoubtedly affected by his pre-existing disease. He also testified that he had not worked for two or three months prior to entering the hospital. However, in view of our findings that respondent was not negligent, it is not necessary to further consider the question of damages.

For the reasons stated, an award is denied.