LAWSON v. TRIPP et al.

No. 1766.   Decided March 28, 1908 (95 Pac. 520).

1. LIMITATION OF ACTIONS—COMPUTATION OF PERIOD OF LIMITATION—ABSENCE AT TIME OF ACCRUAL OF CAUSE OF ACTION—"RETURN TO THE STATE"—"COME INTO THE STATE." The word "return," in Revised Statutes 1898, sec. 2888, providing that "if when the cause of action accrues against a person, he is out of the state, the action may be commenced within the term herein limited after his return to the state," as applied to absent debtors, includes nonresidents as well as citizens of the state who have gone abroad and returned to the state, the words "return to the state" being equivalent to "come into the state."

2. SAME—OPERATION AND EFFECT OF BAR OF LIMITATION—EFFECT AS TO REMEDIES IN OTHER STATES. Where one acquired a cause of action, after its accrual, by assignment, even though when it accrued he was and ever since has been a citizen of the state, he is not within the exception to Revised Statutes 1898, sec. 2899, which provides that when a cause of action which has arisen in another state is barred therein by lapse of time an action thereon shall not be maintained in this state "except in favor of one who has been a citizen of this state and who has held the cause of action from the time it accrued."

3. SAME—CONSTRUCTION OF LIMITATION LAWS IN GENERAL. While statutes of limitation are to be liberally construed, provisions thereof excepting certain persons or classes from the operation of the statutes are to be strictly construed, and courts will not by construction extend such an exception to include persons not expressly mentioned therein.

4. STATUTES—CONSTRUCTION—GIVEN EFFECT TO ENTIRE STATUTE. To so construe one section of a statute as to render abortive another

section thereof is not permissible where the two sections can by any reasonable construction be made to harmonize.

5. ACTIONS—NATURE AND ELEMENT OF CAUSE OF ACTION. A cause of action consists in, first, the primary right and the facts from which it flows, and, second, the breach of that right and facts constituting such breach, which elements taken together create a remedial right.

6. CONTRACTS—CONSTRUCTION—PLACE OF MAKING. The place where the last act is done which is necessary to give validity to a contract for the sale of real estate was written in one state and was signed there on behalf of the vendor, who resided in another state, by one wholly unauthorized to make or sign the contract, and was thereafter forwarded to the vendor, who replied by letter assenting thereto, the contract was made in the state of the vendor, his assent being given there, and being the last act necessary to make the writing a valid contract.

7. SAME—PLACE OF PERFORMANCE. When no place of performance is fixed by a contract, it will be presumed that the contract is to be performed where made.

8. SAME—ACTIONS—PLACE OF ACCRUAL OF CAUSE OF ACTION. A failure to perform a contract made in a foreign state, and which fixed no place of performance, constituted a breach in such state and not elsewhere, and the cause of action arising thereon, if any, arose in such state and not elsewhere.

APPEAL from District Court, Third District; M. L. Ritchie, Judge.

Action by John L. Lawson against Robert B. Tripp and others. From a judgment of dismissal, plaintiff appeals.

AFFIRMED.

*Frick, Edwards & Smith* for appellant.

*Henderson, Pierce, Critchlew & Barrette* for respondents.

McCARTY, C. J.

On the 27th day of November, 1889, E. A. Tripp, of Salt Lake City, Utah, representing himself as the agent of his brother, R. B. Tripp, entered into a written contract to sell

to John A. Groesbeck certain real estate situated in Salt Lake City, Utah, and received the sum of $500 as part payment of the purchase price of the property. The balance, $9,500, was to be paid in 10 days from the date of the contract, and "when a warranty deed and good title is delivered and accepted." The contract also provided that the vendors were to furnish to the vendee on or before December 6, 1889, an abstract of title to the premises. This contract was sent to R. B. Tripp, who at the time resided in South Dakota, where he has ever since continuously resided. There he assented to the contract. On January 30, 1890, Groesbeck sold and assigned to John L. Lawson all his right, title, and interest in and to said contract. On August 30, 1903, Lawson began this action against E. A. Tripp and R. B. Tripp to recover damages for a breach of the contract mentioned. It is alleged in the complaint, among other things, that John A. Groesbeck, after making the payment of the $500 hereinbefore referred to on the contract, continued able, ready, and willing to carry out and fully perform all the terms and conditions of said contract on his part to be performed, and continued able, ready, and willing to pay the sum of $9,500, balance of the purchase price, upon the delivery to him by the defendants of an abstract of title and a warranty deed showing a good and marketable title thereto as provided in said contract. (4) "That the defendants have continuously since the 27th day of November, 1889, failed, refused, and neglected to furnish or deliver an abstract of title to said property, a warranty deed, or any deed, to said premises conveying a good and marketable title to said real estate to the said John A. Groesbeck or to this plaintiff, although said John A. Groesbeck and this plaintiff have often requested the same of the defendants." The complaint further alleged that the defendant "R. B. Tripp has been absent from the state of Utah continuously since the 27th day of November, 1889, to the present time, with the exception of about twenty days, during which time . . . he has been in the state of Utah." A demurrer was interposed on the ground that the action was barred by the statute of limitations. The demurrer was sus-

tained as to E. A. Tripp, and the action dismissed as to him and proceeded against R. B. Tripp alone. R. B. Tripp answered, and after putting in issue the allegations of the complaint, set forth certain separate and specific defenses, among which were: (1) The bar of the statute of limitations, arising under section 2970, Rev. St. Utah 1898; (2) that the defendant tendered a deed in due form for the premises, together with abstract of title showing a good and marketable title to be delivered on receipt from Groesbeck of the balance, $9,500, of the purchase price, and that said tender was refused; (3) that the bar of the statute of limitations arising under the provisions of the Revised Statutes of Utah, and particularly under section 2899, by reason of the fact that under the laws of South Dakota, where defendant had at all times resided, the action had become barred, and was therefore barred within the state of Utah. Evidence was introduced both by plaintiff and defendant in support of their respective claims and theories regarding the merits of the case. The court, however, failed to find on any of the issues involving the merits, but found in effect that the contract was a South Dakota contract, and that the cause of action was barred by the statute of limitations, and entered judgment of dismissal in favor of defendant on that ground alone. To reverse the judgment, plaintiff has appealed to this court.

No error is assigned because of the failure of the court to find on the issues involving the merits of the case. As stated by counsel for appellant in their brief: "It will be observed that the court passed upon the sole question whether the cause of action was barred, eliminating all other questions respecting the merits of the case. . . . The court in this case did not pass upon that phase of the case at all (referring to the merits), but simply based its decision upon the one question, viz., whether or not the cause of action, if any there was, was barred by the statute of limitations." And again they say: "There is, therefore, nothing for this court to consider—in fact, nothing it can legally pass upon—except this question." Counsel for appellant contend that "the contract in question is a Utah contract, to be performed in Utah; that

a breach, if any occurred, occurred in Utah, and that there-
fore a cause of action, if any exists, arose in Utah." Sec-
tion 2875, Rev. St. 1898, provides that "an action upon any
contract, obligation, or liability founded upon any instrument
of writing," etc., must be commenced within six years. Ap-
pellant, however, insists that R. B. Tripp, having continu-
ously resided outside of the state since the alleged breach of
the contract, the cause of action arising thereon is within the
exception provided for by section 2888. This section reads
as follows:

"If when the cause of action accrues against a person, he is out of
the state, the action may be commenced within the term herein limited
after his return to the state; and if after the cause of action accrues he
depart from the state, the time of his absence is not part of the time
limited for the commencement of the action."

In the case of *Burnes v. Crane,* 1 Utah 179, this court, in
harmony with the great weight of authority, held that the
word "return" in section 2888, supra, as applied to absent
debtors, includes nonresidents as well as citizens of the state
who have gone abroad and returned to the state. The words
"return to the state" are held to be equivalent to "come into
the state:" (25 Cyc. 1227-1231; 19 A. & E. Ency. Law, 233;
Buswell, Lim. & Adv. Poss. 117; *Weber v. Yancy,* 7 Wash.
84, 34 Pac. 473; *Burrows v. French,* 34 S. C. 165, 13 S. E.
355, 27 Am. St. Rep. 811; *Wood v. Bissell,* 108 Ind. 229,
9 N. E. 425; *Stanley v. Stanley,* 47 Ohio St. 225, 24 N. E.
493, 8 L. R. A. 333, 21 Am. St. Rep. 806; *Whitcomb v.
Keator,* 59 Wis. 609, 18 N. W. 469; *Parker v. Kelly,* 61
Wis. 552, 21 N. W. 539.)

Respondent, however, insists that the cause of action, if
any existed in favor of plaintiff, arose in South Dakota, and
the action, being barred by the statutes of that state, cannot,
under section 2899, Rev. St. 1898, be maintained in this
state. This section provides:

"When a cause of action has arisen in another state or territory, or
in a foreign country, and by the laws thereof an action thereon cannot
there be maintained against a person by reason of the lapse of time, an
action thereon shall not be maintained against him in this state, except

in favor of one who has been a citizen of this state and who has held the cause of action from the time it accrued."

It is conceded that appellant acquired the claim upon which he bases his right of action by virtue of an assignment after the cause of action had accrued thereon. The question therefore arises, does appellant come within the exception mentioned in section 2899? In other words, has he, within the meaning of the statute, held the cause of action from the time it accrued? It is contended on behalf of appellant that the purpose of the exception is to prevent the statute from running against causes of action generally which are held by citizens of this state who were citizens at the time such actions accrued, regardless of whether they acquired the causes of action before or after they arose, and that therefore appellant comes clearly within the spirit and intent of the exception. The language of the statute is plain, and free from ambiguity. In order to bring a party within the exception, two things must be shown to exist: First, that the party relying upon the exception was, at the time the cause of action arose, and ever since has been, a citizen of this state; and, second, that he had held the cause of action since it accrued. It being conceded that plaintiff acquired his cause of action by assignment after the cause of action accrued, he therefore does not come within the exception. The contention that the exception was intended to include all citizens of this state as a class, and that it was not made in favor of any particular set or class of citizens, and that the statute should be so construed, cannot, under the great weight of authority, prevail. While the general rule is that statutes of limitation generally are to be liberally construed, it is also a well-recognized doctrine that, when such statutes contain provisions excepting certain persons or classes from the operation of the statutes, those exceptions are to be strictly construed. And courts will not by construction extend the exception so as to include persons not expressly mentioned therein. Black, in his work on Interpretation of Laws, p. 332, referring to statutes of limitation, says:

34 Utah—3

"But if the statute itself is to be construed liberally, necessarily it follows that the exceptions which it makes in favor of particular persons or classes are to be construed with strictness. Accordingly the doctrine is now very fully established that implied and equitable exceptions are not to be ingrafted upon the statute of limitations where the Legislature has not made the exception in express words in the statute; the courts cannot allow them on the ground that they are within the reason or equity of the statute."

In *McIver. v. Ragan*, 2 Wheat. 24, 4 L. Ed. 175, the Supreme Court of the United States, speaking through Chief Justice Marshall, says:

"Wherever the situation of a party was such as, in the opinion of the Legislature, to furnish a motive for excepting him from the operation of the law, the Legislature has made the exception. It would be going far for this court to add to those exceptions. It is admitted that the case of the plaintiff is not within them, but it is contended to be within the same equity with those which have been taken out of the statute."

The court then refers to the difficulties to plaintiff and parties similarly situated because of the strict construction placed on the statute by the trial court, and says:

"If this difficulty be produced by the legislative power, the same power might provide a remedy; but courts cannot, on that account, insert in the statute of limitations an exception which the statute does not contain." (25 Cyc. 990; *Allen v. Mille*, 17 Wend. (N. Y.) 202; *Bedell v. Janney*, 9 Ill. 193; *Favorite v. Booher's Adm'r*, 17 Ohio St. 548; *Dozier v. Ellis*, 28 Miss. 730; *Sacia v. De Graaf*, 1 Cow. (N. Y.) 356; *Amy v. City* (C. C.) 22 Fed. 418; *Pryor v. Ryburn*, 16 Ark. 671; Buswell, Lim. & Adv. Poss., 16.)

This brings us to the decisive question presented by this appeal, namely: Did the alleged cause of action accrue in this state, or did it arise in South Dakota? If it arose in the latter state, it follows, from the construction we have given the exception found in section 2890, Rev. St. 1898, that the action is barred; but if the cause of action accrued in Utah, it is not barred, and the judgment of the trial court must be reversed. Counsel for respondent contend that the term "when a cause of action has arisen," as used in section 2899, Rev. St. 1898, should be construed as meaning when the courts of a state have jurisdiction of the particular subject-

matter in controversy and by issuing process can acquire jurisdiction of the person of the defendant, and have cited decisions of able courts which sustain this view. To so construe section 2899 would, in effect, render abortive section 2888 of the same chapter. This we are not permitted to do, provided the two sections can by any reasonable construction be made to harmonize. This rule of statutory construction is so well established and has been so universally followed by the courts that we deem it unnecessary to cite authorities in support of it. The cause of action, if any existed in this case, arose because of the defendant's default in failing to comply with and carry out his part of the agreement hereinbefore mentioned. In other words, he violated a legal duty that he owed to the plaintiff and which was imposed upon him by the terms of the contract. Pomeroy, in his work on Code Remedies, sec. 453, tersely, and, as we think, correctly, defines a cause of action to be:

"A primary right possessed by the plaintiff and a corresponding primary duty devolving upon the defendant; a delict or wrong done by the defendant which consisted in a breach of such primary right and duty; a remedial right in favor of the plaintiff, and a remedial duty resting on the defendant springing from the delict; and, finally, the remedy or relief itself. Every action, however complicated or however simple, must contain these essential elements. Of these elements the primary right and duty and the delict or wrong combined constitute the cause of action."

And again, in section 775 of the same work, the author says:

"The 'cause of action' consists in, first, the primary right, and the facts from which it flows; and, second, the breach of that right, and the facts constituting such breach. These, taken together, create a remedial right and are the cause of action."

In the case of *Bach v. Brown,* 17 Utah 435, 63 Pac. 991, in an opinion written by Mr. Justice Bartch, it is said:

" 'Cause of action,' in the sense here indicated, is synonymous with 'right of action,' and includes the omission or act without which no right of recovery could exist. In this case it includes the omission which constituted the violation of duty agreed to be discharged, and arose at the

time when and place where that duty was to be discharged . . . That
which gives cause for complaint is the breach. Hence, whenever the
breach occurs, whether by commission or omission, the cause of action
arises; and, when the contract is to be performed at a place stipulated,
the act or omission, which is the ground work for complaint, will be
regarded as having occurred at that place." (Bliss, Code Pleading, sec
113.)

Applying the foregoing principles of law, as announced
by such able writers as Pomeroy and Bliss, and as declared
by this court in *Bach v. Brown,* supra, it necessarily follows,
as we have hereinbefore stated, that the wrong out of which
the cause of action alleged in the complaint arose was defend-
ant's failure to perform his part of the agreement. That is,
it was the wrong done, the legal duty violated by defend-
ant in omitting to carry out his part of the contract at the
place where the contract was to be performed. The contract
in this case does not fix the place of performance. The
court, however, found that the contract was made in South
Dakota, and we think the record supports the finding. It
appears that when E. A. Tripp drafted and signed the con-
tract he had no power of attorney or authority of any kind
from his brother, R. B. Tripp, to make the contract. The
record shows that the contract was at no time signed by
Groesbeck. After the contract was drawn and signed by
E. A. Tripp, he immediately forwarded it by mail to R. B.
Tripp at his home in South Dakota and informed him of
what had been done in the premises. R. B. Tripp replied by
letter assenting to the contract. The case is therefore re-
duced to these propositions: A contract is written in Utah
and is signed on behalf of the vendor, who resides in South
Dakota, by one who is wholly unauthorized to make or sign
the contract. Until the vendor signed the instrument pur-
porting to be a contract, or assented to it, there was no con-
tract. Until then the minds of the vendee and vendor did not
meet, and the writing was but a mere offer or proposal. It
matters not where the writing was drafted, whether in Utah
or elsewhere. The question is not where was the contract
drafted or written, but where was it made? It is an ele-
mentary principle of the law of contracts that the place where

the last act is done which is necessary, to give validity to a contract is the place where the contract is made. (9 Cyc. 670; 2 Parsons on Contracts, 712; 3 Page on Contracts, 1718; *U. S. Sav. & Loan Co. v. Beckley,* 137 Ala. 119, 33 So. 934, 62 L. R. A. 33, 97 Am. St. Rep. 19.) In this case the last act necessary to make the writing in question a valid contract was done by R. B. Tripp in South Dakota when he assented to it. Had he withheld assent, there would not have been any valid contract between him and plaintiff's assignor.

It is also a well-recognized rule that, when no place of performance is fixed by the contract, it will be presumed that the contract is to be performed where made. (3 Page on Contracts, 1717; 9 Cyc. 669; *Lewis v. Headley,* 36 Ill. 433, 87 Am. Dec. 227; *First Nat. Bank of Toledo v. Shaw,* 61 N. Y. 294; *Pritchard v. Norton,* 106 U. S. 137, 1 Sup. Ct. 102, 27 L. Ed. 104; 22 A. & E. Enc. Law (2d Ed.) 1325, and cases cited in note 2.) Counsel for appellant concede this to be the law. But they contend that the contract was made in this state, and that it is a Utah contract; and from this premise, in their brief, they reason as follows: "There being nothing in the contract fixing any other place of performance, the law made it performable in Utah and nowhere else. If it was thus to be performed in Utah, a failure to perform any part must inevitably result in constituting a breach in Utah and not elsewhere. From this flows the logical result that a cause of action, if any arose at all, must have arisen in Utah and not elsewhere. Logically no other conclusion is possible." (Citing *Deseret Irr. Co. v. McIntyre,* 16 Utah 398, 52 Pac. 628, and *Brown v. Bach,* supra.) But the court found that the contract was made in South Dakota, and was therefore a South Dakota contract, and, as we have stated, the record supports this finding. Therefore, applying the rule of law contended for by appellant, the correctness of which must be conceded, to the finding that the contract was made in South Dakota, it necessarily follows that the cause of action arose in that state and not in Utah. Hence the finding of the trial court, that the

action was barred by the statute of limitations, must be sustained.

The judgment is affirmed, with costs.

STRAUP, J., and CHIDESTER, District Judge, concur.