**Ben P. DREITH, Plaintiff,**

v.

**The NATIONAL FOOTBALL LEAGUE, Defendant.**

Civ. A. No. 91–C–1289.

United States District Court, D. Colorado.

Nov. 4, 1991.

Richard Vermeire, Denver, Colo., for plaintiff.

John Husband, Denver, Colo., for defendant.

## MEMORANDUM OPINION
## AND ORDER

CARRIGAN, District Judge.

Plaintiff Ben P. Dreith, a Colorado resident, commenced this action asserting

claims under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* (first through fifth claims), and a claim for outrageous conduct (sixth claim). Defendant National Football League (NFL), an unincorporated association with its principal place of business in New York, has moved: (1) to transfer the case to the Southern District of New York; (2) alternatively, to dismiss the plaintiff's ADEA claims; and (3) to dismiss the sixth claim pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff has responded by opposing the motions. In addition the Equal Employment Opportunity Commission (EEOC) has filed a brief *amicus curiae* opposing the motions.

The parties have fully briefed the issues and oral argument would not materially facilitate decision. Jurisdiction exists under 28 U.S.C. § 1343, 29 U.S.C. §§ 216(b) and 626(c)(1) as well as this court's pendent jurisdiction.

## I. Background.

The complaint alleges: In 1970 the NFL hired the plaintiff as a referee. In each of the subsequent eighteen years, the plaintiff was selected to referee post-season playoff games, including two Superbowls.

In December 1989, however, the NFL informed the plaintiff that he would not be allowed to officiate any of that year's playoff games. He was told in early 1990 that he would be demoted from referee to line judge for the 1990–1991 season. Plaintiff worked as a line judge that season, but again was not chosen to officiate any playoff games.

On March 5, 1990, the plaintiff filed a complaint with the Colorado Civil Rights Division alleging that he had been demoted because of his age. That complaint was transferred to the EEOC.

The NFL informed the plaintiff in January 1991 that it would not renew his contract for the coming season. On February 15, 1991, the EEOC issued a written determination that the NFL had violated the ADEA by demoting the plaintiff because of his age.

Plaintiff filed a second EEOC complaint on April 12, 1991, alleging that the NFL

had discharged him because of his age. He amended that charge on April 30, 1991, to include the additional allegation that the NFL had discharged him in retaliation for filing his first EEOC complaint.

On May 15, 1991, the EEOC issued an amended determination of age discrimination that, in addition to restating the finding regarding the plaintiff's demotion to line judge, determined that the NFL's policy to unduly scrutinize its officials' on-field performance after they have reached age sixty violates the ADEA.

Plaintiff commenced this action on July 25, 1991. On August 13, 1991, the EEOC filed an action in the United States District Court for the Southern District of New York, alleging, *inter alia,* that the NFL had demoted the plaintiff because of his age. The district court in New York transferred the EEOC's action to the district of Colorado on October 9, 1991. (*See* plaintiff's supplement brief, Ex. A).

## II. Analysis.

The NFL argues: (1) that this action should be transferred to the Southern District of New York pursuant to 28 U.S.C. § 1404(a); (2) that, alternatively, this action must be dismissed because it is barred by the EEOC's subsequently commenced suit; and (3) that, pursuant to Fed.R.Civ.P. 12(b)(6), the plaintiff's sixth claim must be dismissed.

### A. Transfer Under 28 U.S.C. § 1404(a).

In its brief filed September 4, 1991, the NFL argues that this action should be transferred to the Southern District of New York. However, on October 9, 1991, that court granted the EEOC's unopposed motion to transfer its action to this district. Accordingly, the NFL's motion to transfer will be denied as moot.

### B. Whether This Action is Barred by the EEOC's Subsequently Commenced Action.

The ADEA, 29 U.S.C. § 626(c)(1), provides, in pertinent part, that:

"Any person aggrieved [by a violation of the ADEA] may bring a civil action in

any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter: *Provided*, That the right of any person *to bring* such action shall terminate upon the commencement of an action by the Equal Employment Opportunity Commission to enforce the right of such employee under this chapter." (emphasis added in part).

Relying primarily on *Jones v. Janesville*, 488 F.Supp. 795 (W.D.Wis.1980), the NFL argues that this action is precluded by the EEOC's subsequently filed case.[1] In *Jones*, the plaintiff had filed his complaint two days prior to commencement of the EEOC's action. Interpreting 29 U.S.C. § 626(c)(1), the *Jones* court found the words "to bring" ambiguous, and construed them to mean "to bring *or maintain*." *Id.* at 797 (emphasis added). The court therefore held that the plaintiff's action was precluded by the EEOC's later-filed action asserting the plaintiff's claims. *Id.*

*Jones* obviously is not controlling precedent and the Tenth Circuit has not spoken on the issue presented. I conclude that the better reasoned analysis is found in cases decided after *Jones*, and that the weight of authority is contrary to it. As those later cases conclude, the *Jones* court's interpretation of the words "to bring" in 29 U.S.C. § 636(c)(1) engrafts upon the statute a meaning not justified by its plain language, Congress' intent or relevant policy concerns.

■ In interpreting a statute, a court obviously must begin with the statutory language. *Demarest v. Manspeaker*, ──── U.S. ────, 111 S.Ct. 599, 602, 112 L.Ed.2d 608 (1991). It is a basic tenet of statutory construction that if a statute is clear and unambiguous on its face, it must be given its plain meaning. *Kansas Gas & Elec. Co. v. Brock*, 780 F.2d 1505, 1510 (10th Cir.1985); *Nevada Power Co. v. Watt*, 711 F.2d 913, 920 (10th Cir.1983). In the ab-

sence of a clearly expressed legislative intention to the contrary, the unambiguous language of the statute itself ordinarily must be regarded as conclusive. *Burlington N.R. Co. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 461, 107 S.Ct. 1855, 1859–60, 95 L.Ed.2d 404 (1987).

Indeed the United States Supreme Court has held that if a statute's terms are unambiguous, judicial inquiry into Congressional intent that potentially may require a contrary interpretation is inappropriate, unless exceptional circumstances dictate otherwise. *Id.; Demarest*, 111 S.Ct. at 603. Thus absent ambiguity in the statutory language, lower federal courts are bound to apply a literal interpretation to a statute's words. *Id.* (both cites); *United States v. Colorado Dept. of Health et al.*, 89–C–1646, slip op. at p. 7, 1991 WL 193519 (D.Colo., Aug. 14, 1991).

In *United States v. Durre*, 87–CR–386 (D.Colo.1987), this court looked beyond literal statutory language to conclude that 28 U.S.C. § 1821(a)'s legislative history indicated that Congress did not intend prison inmates to be paid witness fees when subpoenaed and brought by writ to court to testify on behalf of fellow inmates. Similarly interpreting congressional intent, the Tenth Circuit affirmed in a split decision *sub nom Demarest v. Manspeaker*, 884 F.2d 1343 (10th Cir.1989).

But the United States Supreme Court reversed, holding that resort to legislative history was improper because the statute was unambiguous. *Demarest*, 111 S.Ct. at 604. Ninety-one days after the Supreme Court announced its decision in *Demarest*, the President signed into law a bill plainly stating that incarcerated witnesses are not entitled to witness fees under § 1821, thus expressing the intent this court initially, but erroneously, had found to be implied.

■ Interpreting the language of the ADEA § 626(c)(1), I find its words "to

---

1. The NFL's reliance on *Reich v. Dow Badische Co.*, 575 F.2d 363 (2d Cir.), *cert. denied*, 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978), *EEOC v. Pan American World Airways, Inc.*, 52 F.E.P. 926, 1987 WL 97214 (N.D.Cal.1987), and *EEOC* v. *Boeing Co.*, 109 F.R.D. 6 (W.D.Wash.1985) is misplaced. Those cases stand only for the proposition that the EEOC's first filing of an action terminates a private party's right subsequently to commence an action.

bring" plain and unambiguous, susceptible only to the interpretation "to commence" or "to file." It follows that a private ADEA action is not extinguished by a later commenced EEOC action that asserts, in whole or in part, the private plaintiff's claims. If Congress intends a different result, it is for Congress to amend the statute.

That conclusion reflects the majority view. Indeed since *Jones* was decided, courts virtually unanimously have concluded, in well reasoned and persuasive opinions, that commencement of an ADEA action by the EEOC does not preclude or require dismissal of an earlier-filed private ADEA action. *See, e.g., Castle v. Sangamo Weston, Inc.,* 744 F.2d 1464, 1465 (11th Cir.1984), *later proceeding rev'd on other grounds,* 837 F.2d 1550 (11th Cir.1988); *EEOC v. Eastern Airlines, Inc.,* 736 F.2d 635, 639–41 (11th Cir.1984); *Burns v. Equitable Life Assur. Soc.,* 696 F.2d 21, 23–24 (2d Cir.1982), *cert. denied,* 464 U.S. 933, 104 S.Ct. 336, 78 L.Ed.2d 306 (1983); *Howard v. Daiichiya–Love's Bakery, Inc.,* 714 F.Supp. 1108, 1111 (D.Haw.1989). Those courts have assigned to § 636(c)(1)'s words "to bring" their ordinary meaning "to commence," refusing to construe that statutory language as meaning "to commence *and maintain.*" *See Eastern Airlines,* 736 F.2d at 639–40; *Burns,* 696 F.2d at 23–24; *Howard,* 714 F.Supp. at 1111.

The NFL, however, cites *Chapman v. Detroit,* 808 F.2d 459 (6th Cir.1986), for the proposition that where the EEOC's case and a private plaintiff's ADEA case are commenced "virtually simultaneously," the plaintiff's action is precluded. *Chapman* reached that result where the individual action had been commenced only *fourteen minutes* prior to the EEOC's separate action. *Id.* at 463–464.

Even were I to accept the *Chapman* court's conclusion that § 636(c)(1) allows the EEOC's nearly simultaneous but later filing to preempt an individual plaintiff's prior-commenced action, the plaintiff filed this action eighteen days before the EEOC commenced its case. Obviously there was no virtually simultaneous filing here, and

*Chapman* is therefore distinguishable on its facts. *See also Howard,* 714 F.Supp. at 1111 (twenty-six days between the plaintiff's and EEOC's filings: held not "nearly contemporaneous").

Relevant legislative history supports my conclusion that a private ADEA action remains viable notwithstanding a later-filed EEOC action. As noted in *Burns v. Equitable Life Assur. Soc.,* 696 F.2d 21, 24–25 (2d Cir.1982), the ADEA expressly incorporates the procedures originally fashioned by Congress to govern enforcement of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* The ADEA specifies that it "shall be enforced in accordance with the powers, remedies, and procedures" established by the FLSA, including those provided in the FLSA § 216(b), 29 U.S.C. *See* H.R.Rep. No. 805, 90th Cong., 1st Sess. 5, *reprinted in* 1967 U.S.Code Cong. & Ad.News 2213, 2218; *Lorillard v. Pons,* 434 U.S. 575, 580–83, 98 S.Ct. 866, 869–72, 55 L.Ed.2d 40 (1978); *Burns,* 696 F.2d at 23.

In 1961 the FLSA § 216(b) was amended, with language later incorporated into the ADEA § 626(c)(1), to provide that an employee's right "to bring" an action shall terminate upon the filing of a complaint by the Secretary of Labor. *Burns,* 696 F.2d at 23. The conference report accompanying that amendment states that:

"The filing of the Secretary's complaint against an employer would not, however, operate to terminate any employee's right to maintain such a private suit to which he [or she] had become party plaintiff *before* the Secretary's action." Conf. Rep. No. 327, 87th Cong., 1st Sess. 20, *reprinted in* 1961 U.S.Code Cong. & Ad. News 1620, 1706, 1714 (emphasis added).

It is thus clear that because the ADEA § 626(c)(1) incorporates the FLSA's procedural provisions and, presumably, Congress' understanding of the broad scope of the FSLA's private enforcement provisions, Congress did not intend a pending private ADEA suit to be preempted by a subsequently filed EEOC action. *Burns,* 696 F.2d at 23. Other legislative history supports that conclusion. *Id.* at 23–24.

Moreover, adoption of the rule urged by the NFL could result in undesirable consequences. It would discourage early commencement of private ADEA actions because any such action—no matter how close to resolution or how much time and money had been spent in its prosecution—could be cut off by the EEOC filing a similar suit.[2] *See Eastern Airlines,* 736 F.2d at 639; *Burns,* 696 F.2d at 24. That unwarranted delay would be most likely to occur in cases urgently requiring remedial action because those cases are the kind that invite preemptive public litigation. *Burns,* 696 F.2d at 24; *see also* EEOC's brief, p. 5–7. Such a result would frustrate a central goal of the ADEA's framers, who, concerned that delay would prejudice older plaintiffs, sought to avoid it by making courts the preferred forum for resolution of age discrimination complaints. *See Burns,* 696 F.2d at 24 and n. 2 (*quoting* remarks of Senator Javits, 113 Cong.Rec. 7076).

The NFL's policy argument that allowing concurrent prosecution of similar suits may cause unnecessary duplication of effort and waste of judicial resources is unavailing. The courts' inherent authority to control litigation can minimize those possibilities. Moreover, that argument is not here relevant because the EEOC's action has been transferred to this judicial district for consolidation with this case. (Plaintiff's supplement brief, Ex. A).

I recognize that allowing earlier filed private ADEA actions to continue despite later commencement of an EEOC action may encourage a "race to the courthouse door." That result, however, would promote attainment of Congress' goal to have ADEA actions expeditiously resolved, a goal whose achievement could be frustrated if ADEA plaintiffs were discouraged

from exercising their statutory private right of action. Neither law nor policy favors precluding actions commenced by plaintiffs who are willing to incur the attorneys' fees and court costs that easily could be avoided by deferring to the EEOC to press their claims.

■ It further appears that the EEOC, the agency Congress has charged to enforce the ADEA, itself interprets § 626(c)(1) to allow an antecedent private action to continue despite the EEOC's later commencement of a public action. (*See* EEOC's brief, p. 3–7). The EEOC's reasonable interpretation of the ADEA is entitled to deference in this court. *See Peterson v. Wichita,* 888 F.2d 1307, 1309 (10th Cir. 1989) (deferring to EEOC's interpretation of Title VII).

In sum, I concur with the majority view that the unambiguous words "to bring" in the ADEA § 636(c)(1) mean "to commence." On that basis and for the other above stated reasons, I hold that the EEOC's filing of an ADEA complaint does not require dismissal of a private plaintiff's earlier filed ADEA action. It follows that the NFL's motion to dismiss must be denied.

### C. Dismissal of Outrageous Conduct Claim.

Pursuant to Fed.R.Civ.P. 12(b)(6), the NFL argues that, under New York state law, the plaintiff's sixth claim asserting outrageous conduct based on intentional infliction of emotional distress must be dismissed. The NFL further asserts that the sixth claim is not viable under Colorado law if it is applicable.

In considering a Rule 12(b)(6) motion, the complaint must be construed liberally, *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), and its factual

---

**2.** The concern that private actions might be discouraged is not unfounded. Unlike Title VII litigants, ADEA plaintiffs privately may commence an action sixty days after filing a complaint with the EEOC without a right to sue letter. 29 U.S.C. § 626(d). At the latest, a private action must be commenced within two years after the action accrues. 29 U.S.C. §§ 255, 626(e). If the EEOC pursues the plaintiff's claims, however, the limitations period

may be tolled for as long as one year during voluntary compliance proceedings. 29 U.S.C. § 626(e). Under the NFL's proposed reading of § 626(c), a worst case scenario could find a private ADEA action being precluded by an EEOC complaint filed almost three years after the private action was commenced. Plaintiff's attorneys' fees and costs incurred to that date, however, would go unreimbursed.

838

allegations are assumed to be true. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Dismissal of a claim is improper unless it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

I first must answer the choice of law question presented. In *First Nat. Bank v. Rostek*, 182 Colo. 437, 514 P.2d 314, 320 (Colo.1973), the Colorado Supreme Court adopted the Restatement (Second) of Conflicts § 145 as the standard for determining choice of law questions in multistate tort controversies.

Defining general conflict of law principles related to tort actions, § 145 provides, in pertinent part, that:

"(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most *significant relationship* to the occurrence and the parties....

(2) Contacts to be taken into account ... to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence ... and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered." (emphasis added).

Section 145 is applicable in determining what law applies to intentional torts. *See* Restatement (Second) of Conflicts § 156, comment (c). However, the relative importance of the contacts defined by § 145 varies with the nature of the tort involved. *Id.* at § 145 and comment (f). When casual conduct and the personal injury occur in different states, the local law of the state where the injury occurred is usually applied. *Id.* at § 146, comment (e).

■ Applying § 145's significant relationship test, it appears that the plaintiff is a long-term resident and present domiciliary of Colorado. While the NFL's principal place of business is in New York, it conducts some of its business in Colorado. The parties' employer/employee relationship, however, was centered in New York, and the conduct alleged to have caused the plaintiff's injury occurred there.

While the above factors appear evenly balanced, the plaintiff's sixth claim asserts intentional infliction of emotional distress. Thus, conduct occurring outside Colorado is alleged to have been intentionally directed at a Colorado resident. Further it cannot reasonably be disputed that the plaintiff incurred the alleged injury in Colorado. In these circumstances, I conclude that Colorado has the most significant relationship to the tort issues presented and, therefore, Colorado law must be applied. I turn now to the merits of the NFL's motion to dismiss.

■ The tort of intentional infliction of emotional distress was first recognized by the Colorado Supreme Court in *Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753, 756 (1970). Liability for that tort may be found only:

"where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 756 (*quoting* Restatement (Second) Torts § 46).

■ Thus the defendant's conduct must go beyond the merely unreasonable, unkind or unfair; it must substantially offend community notions of acceptable conduct. *Grandchamp v. United Air Lines, Inc.*, 854 F.2d 381, 383 (10th Cir.1988), *cert. denied*, 489 U.S. 1080, 109 S.Ct. 1534, 103 L.Ed.2d 838 (1989). The jury determines the ultimate question whether the challenged conduct was outrageous, but the court must decide the preliminary issue whether reasonable persons could differ on whether it was outrageous. *Id.*

■ Under Colorado law a claim for outrageous conduct may be cognizable in an employment context. *Id.* at 384–85.

However, mere discharge from employment, without more, is not outrageous conduct. *Id.* (and cases there cited). Rather the *manner* of the discharge, and the employer's conduct leading to it, are the primary factors to be scrutinized in accessing an outrageous conduct claim's viability. *Id.* at 385.

 In his complaint and brief, the plaintiff asserts that the NFL demoted him from referee to line judge, a position with which he was unfamiliar, in an attempt to humiliate him during nationally televised football games. (Complaint ¶¶ 54, 62–63; plaintiff's brief, p. 8). He also contends that he was assigned as a "Swing Line Judge," requiring him to work with a different officiating crew each week, so that the NFL could "justify firing him based on an inadequate performance in this new position." (Complaint ¶¶ 76, 77). Plaintiff further alleges that his work was unduly scrutinized to justify his lower performance ratings and discharge. (Complaint ¶¶ 96, 98).

Construing the complaint liberally and assuming its allegations to be true, as I must, I conclude that, in the context of all the evidence at trial, reasonable jurors could differ on whether the NFL's conduct was outrageous. Therefore the NFL's motion to dismiss the sixth claim must be denied.

Accordingly, IT IS ORDERED that:

(1) the NFL's motion to transfer this action to the United States District Court for the Southern District of New York is denied as moot;

(2) the NFL's motion to dismiss the plaintiff's ADEA claims is denied;

(3) the NFL's motion to dismiss the plaintiff's sixth claim asserting outrageous conduct is denied; and

(4) the parties and their counsel are ordered to meet and confer within eleven days of this order in a good faith attempt to settle the case without further litigation, expense or delay. The parties shall report to this court in writing within fifteen days of this order, stating the results of their settlement negotiations and whether a conference before a Magistrate Judge or some other alternative dispute resolution proceeding, would facilitate settlement.