**Lavon P. ANKERS, Plaintiff,**

v.

**Dennis RODMAN, Defendant.**

**No. 2:96–CV–0705–S.**

United States District Court,
D. Utah,
Central Division.

Feb. 28, 1997.

Harry Caston, McKay Burton & Thurman, Salt Lake City, UT, for Plaintiff.

Timothy C. Houpt, Jones Waldo Holbrook & McDonough, Salt Lake City, UT, Richard K. Howell, Rutan & Tucker, Costa Mesa, CA, for Defendant.

## MEMORANDUM DECISION

SAM, Chief Judge.

Before the court is a motion to dismiss filed by defendant Dennis Rodman. The court, having reviewed the memoranda submitted by the parties, will rule on the motion without the assistance of oral argument, pursuant to D.Ut. 202(d).

## BACKGROUND

According to the complaint, plaintiff Lavon P. Ankers was employed at the Delta Center in Salt Lake City as an usher during basketball games. On May 5, 1994, the Utah Jazz basketball team was hosting the San Antonio Spurs basketball team in a nationally-televised game in the Delta Center. Defendant was employed as a player for the Spurs. Plaintiff was standing in her assigned courtside area.

At the beginning of the fourth quarter of play, defendant attempted to gain possession of a loose ball without going out of bounds. However, he was unable to do so and left the court to retrieve the ball. After regaining his balance, defendant continued to walk away from the court and into plaintiff's seating area. He walked past plaintiff, then turned around and started to walk back to the court. As he passed plaintiff again, he

placed his hand on plaintiff's buttocks and pinched her.

Defendant's conduct was witnessed by spectators present at the game as well as a local and national television audience. The television broadcast, although not revealing the actual touching of plaintiff's buttocks, showed defendant coming up behind plaintiff and plaintiff's reaction to defendant's apparent touch.

On August 16, 1996, plaintiff brought suit, alleging claims of battery and intentional infliction of emotional distress. Defendant now moves to dismiss each of plaintiff's claims.

## STANDARDS FOR DISMISSAL

The court will dismiss a complaint " 'only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief.' " *Mascheroni v. Board of Regents of Univ. of Cal.*, 28 F.3d 1554, 1560 (10th Cir.1994) (quoting *Jacobs Visconsi & Jacobs v. City of Lawrence*, 927 F.2d 1111, 1115 (10th Cir.1991)); *accord Coosewoon v. Meridian Oil Co.*, 25 F.3d 920, 924 (10th Cir.1994). In determining the sufficiency of a complaint, the court " 'must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff.' " *Mascheroni*, 28 F.3d at 1560 (quoting *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir.1991)); *accord Coosewoon*, 25 F.3d at 924.

## ANALYSIS

■ Defendant argues plaintiff's battery claim is barred by the statute of limitations, and plaintiff's complaint fails to plead facts supporting a claim for intentional infliction of emotional distress. The court will address each of plaintiff's causes of action.

### I. Battery

Plaintiff claims defendant's alleged touching "was an unlawful and unauthorized invasion of her person." Complaint, ¶ 12. Therefore, although not so identified, plaintiff is alleging a cause of action for battery.

Battery claims in Utah are subject to a one-year statute of limitations.[1] Defendant's alleged battery occurred May 5, 1994, but plaintiff did not file suit until August 16, 1996. Therefore, unless a tolling provision applies to plaintiff's battery claim, it is time-barred on its face.

Plaintiff invokes Utah Code Ann. § 78–12–35 (1996) ("Section 78–12–35"), contending the limitations period for her battery claim was tolled by defendant's absence from the State of Utah. Section 78–12–35, with the court's emphasis, provides:

> Where a cause of action accrues against a person when he is out of the state, the action may be commenced within the term as limited by this chapter after his return to the state. *If after a cause of action accrues he departs from the state, the time of his absence is not part of the time limited for the commencement of the action.*

Because defendant left Utah after the basketball game in question and has been largely absent from the state ever since, except for other basketball games, plaintiff argues the amount of time of defendant's absence from Utah should not be included in calculating the one-year time deadline.

Defendant argues that, during his absence from the State of Utah, he has been subject to plaintiff's service of process by means of Utah's long-arm statute. This statute states, in relevant part:

> Any person, notwithstanding Section 16–10a–1501 [transacting business], *whether or not a citizen or resident of this state*, who in person or through an agent does any of the following enumerated acts, submits himself, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to *any claim arising from:* . . .

1. *See* Utah Code Ann. § 78–12–29 (1996) ("An action may be brought within one year: . . . for libel, slander, assault, *battery*, false imprisonment, or seduction.") (emphasis added).

(3) the causing of any *injury within this state* whether *tortious* or by breach of warranty.

Utah Code Ann. § 78–27–24 (1996) (emphasis added). Defendant, thus, claims Section 78–12–35 does not toll the one-year statute of limitations because the section does not apply to nonresidents like him who are subject to service of process by virtue of Utah's long-arm statute.

■ Utah's appellate courts have not considered the specific issue of whether Section 78–12–35 applies to nonresident defendants who are subject to service of process under the long-arm statute. In diversity cases, like the instant matter, if no state court has addressed the applicable substantive law of the state, "federal courts must predict how the state's highest court would rule." *Weiss v. United States,* 787 F.2d 518, 525 (10th Cir.1986). To make this prediction, "federal courts must follow intermediate state court decisions, policies underlying the applicable legal principles, and the doctrinal trends indicated by these policies." *Id.; accord Taylor v. Phelan,* 9 F.3d 882, 887 (10th Cir.1993); *see also Jordan v. Shattuck Nat'l Bank,* 868 F.2d 383, 386 (10th Cir.1989) ("[i]n the absence of a state supreme court ruling, a federal court must follow an intermediate state court decision unless other authority convinces the federal court that the state supreme court would decide otherwise.") (citation omitted).[2]

In *Snyder v. Clune,* 15 Utah 2d 254, 390 P.2d 915 (1964), the Utah Supreme Court addressed the applicability of Section 78–12–35 to nonresident motorists. In *Snyder,* the plaintiff filed suit against the defendants, resulting from an automobile accident, three days after the applicable four-year statute of limitations expired. To avoid dismissal, the plaintiff invoked Section 78–12–35, claiming the limitations period was tolled because the defendants, California residents, returned to California and remained there after the acci-

dent. The trial court ruled in favor of the plaintiff.

On appeal, the Utah Supreme Court first stated:

[S]tatutes of necessity must state their objectives in general language. It is not always possible to foresee and prescribe in precise detail for all situations to which they might apply. Attempts to give them universal and literal application frequently lead to incongruous results which were never intended. When it is obvious that this is so, the statute should not be so applied. In order to give a statute its true meaning and significance it should be considered in the light of its background and the purpose sought to be accomplished, together with other aspects of the law which have a bearing on the problem involved.

*Snyder,* 390 P.2d at 916. The appellate court then concluded the purpose of Section 78–12–35 was "to prevent a defendant from depriving a plaintiff of the opportunity of suing him by absenting himself from the state during the period of limitation." *Id.* The court noted that, by virtue of the nonresident motorist act, the Secretary of State could receive service for a nonresident as his or her agent. Therefore, because the plaintiff could have served the nonresident defendants any time through the Secretary of State, the defendants were never " 'absent' from the state in the sense contemplated by the statute, that is, unavailable for the service of process." *Id.* The court further reasoned a literal interpretation of Section 78–12–35 would permit claims against nonresidents to survive indefinitely, in conflict with the objective of a statute of limitations, although nonresidents could be served with process. The court, thus, dismissed the plaintiff's case as untimely.

Defendant, a nonresident, claims his situation is analogous to that of the nonresident

---

**2.** *But see Perlmutter v. United States Gypsum Co.,* 54 F.3d 659, 662 (10th Cir.1995) ("although we are not obligated to follow the pronouncements of lower state courts, 'in the absence of any compelling reason to disregard [them],' we follow decisions of the ... Court of Appeals as well.") (citation omitted).

defendants in *Snyder.* The *Snyder* defendants were deemed not to be "absent" from the state, as contemplated by Section 78–12–35, because they were subject to service of process under the nonresident motorist act. Thus, the limitations period tolled against the plaintiff who could have served the defendants with process any time. Defendant argues he, likewise, has not been "absent" from the state, for purposes of Section 78–12–35, because he has been subject to service of process under Utah's long-arm statute. Therefore, defendant asserts, the limitations period should toll against plaintiff because she could have served defendant any time within a year of the incident at issue, including when defendant was in Utah for basketball games, in the same manner as a Utah resident. *See* Utah Code Ann. § 78–27–25 (1996).

The Utah Court of Appeals, however, examined this tolling issue years later in *Van Tassell v. Shaffer,* 742 P.2d 111 (Utah App. 1987). In *Van Tassell,* the plaintiffs secured judgments against the defendant but waited over eight years before acting to reaffirm those judgments. The defendant, therefore, claimed the plaintiffs' suit was barred by the applicable eight-year statute of limitations. Despite the fact that the defendant was a Utah resident amenable to service under the Utah Rules of Civil Procedure, the trial court ruled in favor of the plaintiffs, concluding the limitations period was tolled while the defendant was absent from the state for personal and business purposes.

On appeal, the Utah Court of Appeals surveyed both Utah Supreme Court cases and the law of other jurisdictions. The court determined Utah follows the minority rule that permits statutes of limitations to be tolled while a resident defendant is absent from the state even though service could be effectuated at the defendant's residence. Thus, in view of controlling precedent explicitly permitting statutes of limitation to be tolled while a resident defendant amenable to service is out of state, the court affirmed the trial court's ruling.

In its survey of Utah law, the Court of Appeals found *Snyder* inconsistent with Utah's prevailing view and more indicative of the majority rule that "a plaintiff's right of action is not tolled while defendant is outside of the state but remains subject to personal jurisdiction." *Van Tassell,* 742 P.2d at 112. Moreover, the Court of Appeals clearly favors this majority rule, stating: "[T]he majority view, which holds that defendant's absence does not toll the statute of limitations where defendant is amenable to personal jurisdiction, would be preferred by this Court as the Utah rule, as we find it to be more consistent with the purposes of statutes of limitations." *Id.* at 113. Concerning the purposes of statutes of limitations, the court explained:

> [T]he purpose of statutes of limitations would be undermined if the tolling statute were applied in cases where defendant is at all times amenable to service of process.... [T]o allow tolling to operate would mean that actions against absent defendants would practically never be outlawed and that claims may be held in suspense for years even though the action could have been commenced through substituted service.

*Id.* at 113, n. 3 (citing *Byrne v. Ogle,* 488 P.2d 716, 717 (Alaska 1971)).

The court noted *Snyder* did not overrule prior cases nor was it distinguished, explained, or overruled by succeeding Utah cases. Offering one explanation for this inconsistency in Utah law, the appellate court recognized the differences between residents, such as the defendant in *Van Tassell,* and nonresidents:

> *Snyder* can arguably be distinguished from the other three cases because it involved defendants who left the state immediately after the automobile accident which was the basis of the suit. If the statute of limitations had been tolled due to defendants' absence, *the action against the nonresident motorist may have been in suspense forever. In comparison, residents presumably will eventually return to the state,* even though some residents' absences may total many years.

*Id.* at n. 2 (emphasis added). Nevertheless, in view of the factual context of *Snyder,* the Court of Appeals "assume[s] that proceedings under the nonresident motorist act are the only Utah proceedings in which the applicable statute of limitations is not tolled by absence from the state until and unless the Utah Supreme Court states otherwise." *Id.* at 113.

■ This court's ultimate responsibility is to anticipate how the Utah Supreme Court would apply Section 78–12–35 to nonresidents subject to service of process under Utah's long-arm statute. While resolution of this issue involves following intermediate state court rulings in the absence of a ruling by the state's highest court, the court must also examine doctrinal trends and the policies underlying legal principles. Thus, this court may depart from an intermediate state court decision if other authority convinces it "the state supreme court would decide otherwise." *Jordan,* 868 F.2d at 386.

This court is convinced that cases involving the nonresident motorist act are not the only ones in which the Utah Supreme Court would decline to toll the statute of limitations due to absence from the state, but it would not toll the statute of limitations, by applying Section 78–12–35, when a nonresident is subject to the reach of Utah's long-arm statute as well. The court believes the reasoning of the Utah Supreme Court in *Snyder* as well as that of the Utah Court of Appeals in *Van Tassell* supports this result.[3]

In keeping with the *Snyder* court's counsel to interpret a statute "in the light of its background and the purpose sought to be accomplished," *Snyder,* 390 P.2d at 916, both courts acknowledge that the purpose of Section 78–12–35 is "to prevent a defendant from depriving a plaintiff of the opportunity of suing him by absenting himself from the state during the period of limitation." *Snyder,* 390 P.2d at 916; *Van Tassell,* 742 P.2d

at 113. Here, because of the effect of the long-arm statute, defendant's absence from the state does not deprive plaintiff of such an opportunity. Moreover, both courts have expressed concern that applying Section 78–12–35 to nonresident defendants who are subject to service of process conflicts with the purposes behind a statute of limitations as suits against such defendants could linger indefinitely. *See Snyder,* 390 P.2d at 916; *Van Tassell,* 742 P.2d at 113, n. 2 and n. 3. The instant case is no exception. So long as defendant remains absent from Utah, plaintiff's battery claim could remain alive for years, regardless of the fact that defendant is amenable to service under the long-arm statute. Furthermore, because the instant case is factually analogous to *Snyder,* the last time the Utah Supreme Court addressed this tolling issue as applied to nonresident defendants, there is reason to believe the court would treat this case in a similar fashion. Also, the Utah Court of Appeals' clear expression in *Van Tassell* of a preference for a rule that a defendant's absence from Utah does not toll the applicable statute of limitations when the defendant is subject to personal jurisdiction in Utah, albeit in dicta, surely would not go unnoticed by the Utah Supreme Court. Finally, because plaintiff could have filed suit against defendant within one year and served process either under the long-arm statute or in person when he was present in Utah for basketball games, declining to apply Section 78–12–35 would not be harsh or unjust.

Consequently, because the court declines to apply Section 78–12–35 to toll the limitations period for plaintiff's battery claim due to defendant's absence from Utah, this claim is time-barred on its face.

## II. *Intentional Infliction of Emotional Distress*

■ Plaintiff contends that, as a result of defendant's behavior, she "was and continues

---

3. Plaintiff cites the early case of *Lawson v. Tripp,* 34 Utah 28, 95 P. 520 (1908) in support of the proposition that Section 78–12–35 applies to nonresidents. The specific question before the court, however, is whether Section 78–12–35 applies to nonresidents who are, nevertheless, subject to service of process under such provisions as the long-arm statute. The court does not find *Lawson* instructive on this issue.

to be greatly humiliated, shamed, embarrassed" and has "endured great mental suffering." *See, e.g.,* Complaint, ¶ 10. Moreover, plaintiff alleges defendant's touching constituted "outrageous conduct" such that she has "suffered and continues to suffer severe and extreme emotional distress." Complaint, ¶¶ 16 and 19. Defendant asserts the conduct plaintiff attributes to him is not sufficiently outrageous for plaintiff to state such a claim.

■ The Utah Supreme Court restated the elements of intentional infliction of emotional distress in *Russell v. Thomson Newspapers, Inc.,* 842 P.2d 896 (Utah 1992):

> To prove such a claim, a plaintiff must show (a) that the defendant intentionally engaged in some conduct toward the plaintiff considered outrageous and intolerable in that it offends the generally accepted standards of decency and morality (b) with the purpose of inflicting emotional distress or where any reasonable person would have known that such would result, and (c) that severe emotional distress resulted as a direct result of the defendant's conduct.

*Id.* at 905 (citing *Samms v. Eccles,* 11 Utah 2d 289, 358 P.2d 344, 346–47 (1961)); *accord Jackson v. Brown,* 904 P.2d 685, 687–88 (Utah 1995); *Retherford v. AT & T Communications,* 844 P.2d 949, 970–71 (Utah 1992). It is the court's duty to decide

> whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.

*In re Estate of Grimm,* 784 P.2d 1238, 1246 (Utah App.1989) (quoting Restatement (Second) of Torts § 46 cmt. h (1965)), *cert. denied,* 795 P.2d 1138 (Utah 1990).

■ The burden of proving "outrageous conduct" is a heavy one as liability exists only where the conduct is "atrocious, and utterly intolerable in a civilized community." *Retherford,* 844 P.2d at 977–78 n. 19 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Moreover, for a plaintiff to prevail on this claim, the case must be "one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id.* As the Restatement of Torts, to which Utah courts have turned for guidance in evaluating claims for emotional distress, explains:

> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt.

Restatement (Second) of Torts § 46 cmt. d (1965); *see also id.* at cmt. f ("[M]ajor outrage is essential to the tort; and the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough."). Utah cases analyzing the tort of intentional infliction of emotional distress have found merit only in extreme situations.[4] Thus, "dismissal of a claim is proper if the alleged conduct of

---

4. *See, e.g., Jackson,* 904 P.2d at 687–88 (intentional infliction of emotional distress properly pled where defendant, a married man, proposed to plaintiff, obtained a marriage license, and planned a ceremony before telling plaintiff the truth the morning of the ceremony); *Retherford,* 844 P.2d at 978 (trial court improperly dismissed claim for intentional infliction of emotional distress where defendants allegedly engaged in

"months of persecution" of plaintiff by sexually harassing, threatening, and manipulating circumstances of employment to increase stress, causing plaintiff to seek therapy); *Larson v. SYSCO Corp.,* 767 P.2d 557, 560–61 (Utah 1989) (termination from employment insufficient to impose liability); *Pentecost v. Harward,* 699 P.2d 696, 700 (Utah 1985) (intentional infliction of emotional distress properly pled where defen-

the defendant does not rise to the level of outrageousness as required under Utah law." *Boisjoly v. Morton Thiokol, Inc.*, 706 F.Supp. 795, 801 (D.Utah 1988).

Defendant argues that, while the alleged pinch, which lasted for a moment only, may have been rude, inappropriate or offensive, it does not rise to the level such that a reasonable jury could find it outrageous, atrocious, or utterly intolerable in civilized society.

Plaintiff counters initially that defendant's conduct was outrageous because of its context; it occurred not only in front of spectators at the Delta Center, but in front of a local and national television audience as well. Moreover, plaintiff suggests the impact of defendant's conduct was greatly magnified because defendant was the center of attention. Plaintiff first notes defendant is Dennis Rodman, a basketball player known for his controversial behavior. Plaintiff further argues that, because defendant had the ball, the eyes of the audience were upon him at the time of the alleged touching. Finally, plaintiff states Madonna, defendant's girlfriend at the time, was present. Although plaintiff cites cases from other jurisdictions in support of her argument that publicity magnifies the effect of offensive conduct, they are easily distinguished on their facts. Each of plaintiff's cases involves conduct distinct from and far more egregious than that alleged in the present case.[5]

█  Plaintiff also contends defendant's conduct was necessarily outrageous because such conduct would constitute a misdemeanor under Utah law. This argument, however, ignores the standards for outrageousness set forth in Utah law. The test is whether the conduct at issue violates "generally accepted standards of decency and morality." This particular standard has been further defined in terms of whether the behavior is so "atrocious and utterly intolerable in a civilized community" that it would cause someone to exclaim "Outrageous!" Because the test is not whether the behavior in question violates local statutes,[6] the fact that it may constitute a misdemeanor is not decisive in determining whether it is outrageous for purposes of claiming intentional infliction of emotional distress.

The court agrees with defendant that reasonable minds would not differ in concluding that defendant's alleged pinch does not constitute atrocious or utterly intolerable behavior. Rather, in the court's opinion, the alleged conduct constitutes an "insult," "indignity," or act which is "definitely inconsiderate and unkind" but which does not rise to a level warranting imposition of liability.

---

dant allegedly, without judicial process, forcefully evicted plaintiff and her children and kept their personal possessions); *Samms v. Eccles*, 11 Utah 2d 289, 358 P.2d 344, 347 (1961) (intentional infliction of emotional distress properly pled where defendant allegedly persistently propositioned plaintiff, a married woman, to engage in sexual relations); *White v. Blackburn*, 787 P.2d 1315, 1317–18 (Utah App.1990) (defendant's purchase of airplane ticket for plaintiff's son without plaintiff's knowledge insufficient to impose liability); *Grimm*, 784 P.2d at 1246–47 (trial court improperly dismissed claim for intentional infliction of emotional distress where defendants allegedly threatened and harassed plaintiff and broke into her home, causing her to be hospitalized twice).

**5.** *See, e.g.*, *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d Cir.1979) (physician's "intolerable professional conduct" in falsely reporting to the national press that plaintiff had a fatal disease was sufficient to support a claim for intentional infliction of emotional distress); *Dreith v. National Football League*, 777 F.Supp.

832, 839 (D.Colo.1991) (defendant's cumulative actions of demoting plaintiff to line judge to humiliate him during televised football games, reassigning him to an unfamiliar work assignment to justify lower performance ratings, and unduly scrutinizing his work were sufficient to state a claim for intentional infliction of emotional distress); *Miller v. National Broadcasting Co.*, 187 Cal.App.3d 1463, 232 Cal.Rptr. 668, 681–82, 685 (1986) (network's repeated broadcasting of paramedics' unsuccessful attempts to resuscitate plaintiff's husband was sufficient to state a claim for intentional infliction of emotional distress).

**6.** *See, e.g.*, Restatement (Second) of Torts, § 46 cmt. d (1965) ("It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.").

Therefore, the court concludes defendant's alleged conduct is not outrageous, as defined by established law, so as to support a claim for intentional infliction of emotional distress.

## CONCLUSION

In sum, the court concludes the applicable one-year statute of limitations for plaintiff's battery claim is not tolled due to defendant's absence from Utah. Consequently, this claim is time-barred. Moreover, the court has determined, as a matter of law, that plaintiff has failed to plead facts adequately supporting a claim for intentional infliction of emotional distress. Accordingly, the court hereby GRANTS defendant's motion to dismiss in its entirety.